THE STATE v. GEORGE W. HESS, Appellant.

Division Two, February 27, 1912.

1. INDICTMENT: Two Counts: Arson: Burning Goods with Intent to Defraud Insurance Companies: Withdrawal of First: Acquittal of Second. The withdrawal from the jury of the first count of the indictment charging defendant with burning a stock of goods belonging to his wife, did not amount to an acquittal of the charge contained in the second count which charged defendant with burning the same property with intent to defraud the insurance companies by which the property was insured. The two counts charged different statutory offenses.

State v. Hess.

2. **ARSON: Attempt: Proof.** The indictment charged defendant with burning a stock of drugs, stationery, cigars and shelving, with intent to defraud the insurance companies in which the property was insured. *Held,* that testimony that fire was burning in four places, two on each side of the store room near the floor, that holes had been made in the walls and the fires started with excelsior and small pieces of wood, that some of the shelving had burned, and that a ledger, which was leaning against one of the fires, was burning, and a part of it saved, was proof that the insured personal property was burned.

3. **REMARKS OF ATTORNEY: Argument to Jury: Horrors of Mob.** To hold up before the jury the horrors of mob law is not a proper method of securing verdicts of conviction. Juries should convict on the evidence produced, and not through a fear that law will be set aside and a reign of anarchy substituted unless verdicts of guilty are returned.

4. ——————: ——————: **Belief of Prosecutors.** An appeal by the prosecuting attorney to the jury to convict, because he believes defendant guilty and because the warrant officer who issued the warrant believed him guilty, is improper and may be prejudicial; and where the case is close on the evidence, and there is strong evidence that the chief witnesses for the State were angry at defendant because he caught them stealing from his store and kicked them out, and the prosecuting attorney, angered by this impeachment, brought into the scale his own personal belief of defendant's guilt and that of the officer who issued the warrant, the verdict of guilty will be reversed.

5. **WITHDRAWING COUNT OF INDICTMENT: Acquittal.** The voluntary withdrawal by the court of a count of the indictment from the jury after it has been sworn, is an acquittal of defendant of the charge contained in that count, and he cannot again be tried for the crime charged therein.

6. **ARSON: Defrauding Insurance Company: Intent: Instruction.** Where defendant is charged with burning a stock of goods with the intent to defraud the insurance company by which they were insured, the court should instruct the jury that, although they may find that defendant burned the goods, they must acquit him unless they believe such burning was done with the intent to defraud the companies.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

REVERSED AND REMANDED.

*C. Orrick Bishop* for appellant.

(1) The record does not show, or tend to show, that any goods, wares, merchandise, fixtures, shelving or furniture were burned in this fire. The demurrers to the evidence, first and last, were directed to the absolute failure of proof of the charge contained in this indictment, and should have been sustained. (2) The court erred in submitting to the jury by its instruction the question of whether defendant did "willfully, maliciously and feloniously set fire to and burn a certain retail stock of drugs, chemicals, bottles, patent medicines, cigars, tobacco and stationery, certain store fixtures, shelving and furniture," etc., when the State had wholly failed to prove that by the fire in question anything had been burned except certain portions of the building in which the above-mentioned chattels were situated. (3) The *corpus delicti* in arson is not merely the burning of the house, but that it was burned by the willful act of some person criminally responsible for his acts and not by natural or accidental causes. The *corpus delicti* must be established in every criminal prosecution before a conviction can be sustained. Mere suspicion, however strong, will not supply the place of evidence when life and liberty are at stake. State v. Jones, 106 Mo. 312; State v. Morney, 196 Mo. 43. It will be noticed in this case that appellant was taken into custody during the progress of the fire, emerging from his sleeping room in the burning building in his night dress, and was kept in close custody for three days and a half before any formal charge was preferred against him, in violation of the law (R. S. 1899, sec. 2107; R. S. 1909, sec. 4418), and no opportunity was afforded him to examine the place and ascertain, if he could, the origin of the fires—but the place was left at the mercy of marauders or the manufacture of evidence against him. The suspicion of officer

Short and the suspicion of the assistant fire chief (whose pertness and flippancy as a witness will not escape the notice of the court in reviewing his testimony) seem to have been sufficient to place the accused in a position where he could not help himself. And it is worthy of remark in this connection that there was never any suggestion, or appearance of suspicion, on the part of the insurers that there was anything about the fire indicating fraud on the part of the assured. State v. Pieneck, 46 Wash. 522. (4) The court erred to the prejudice of appellant in excluding testimony tending to contradict the testimony of the boys regarding matches. The testimony of the three boys, on the part of the State, was the only testimony (outside of what may be termed suspicious circumstances) which tended in any way to connect appellant with the alleged arson. And the same exception applies to the exclusion by the court of the testimony of the witness Stille as to the improbability of a person seeing through the window of the drug store into the interior as testified to by the boy witness. Railroad v. Champion, 9 Ind. App. 510. (5) The court erred in permitting the circuit attorney, over defendant's timely objections, to make improper remarks to the jury in his argument and to argue the case outside the record. Mere personal abuse of an accused by the prosecuting officer is not only illegitimate argument, but is to be condemned; and the duty of the trial court, when defendant timely objects, is to reprimand. State v. Fischer, 124 Mo. 464; State v. Bobbst, 131 Mo. 338. And where the prosecuting attorney said, "Escape of criminals at the hands of juries brings on lynch law," this court said, "such remarks should not be tolerated in a court of justice," and held it reversible error. State v. Jackson, 95 Mo. 623. (6) Appellant urges that he is entitled to an absolute discharge by this court. The first count of the indictment, if sustained by the evidence, was sufficient to

uphold a conviction. The second count, if sustained by the evidence, was sufficient to uphold a conviction; yet it added nothing to the guilt alleged in the first, in no wise varied the charge, in no wise changed the degree of the offense, and in no respect affected the quality or quantity of the punishment. It does not appear from the record that the first count was nolled nor that any election was asked for by appellant, nor that any was directed by the court nor made by the prosecuting attorney. The court in its first instruction simply stated, "The first count of the indictment is withdrawn from your consideration." It needs no citation of authorities that appellant was acquitted on the first count of the offense of arson in the third degree, as charged, and could plead former jeopardy to a later prosecution for the same alleged burning. Yet he was convicted of the very offense of which he was acquitted. Appellant claims that he was acquitted of the crime charged against him before the question of his guilt or innocence was submitted to the jury, and hence there was nothing for the jury to pass upon, and their verdict was "insufficient to support a verdict." State v. Headrick, 179 Mo. 307.

*Elliott W. Major,* Attorney-General, and *John M. Atkinson,* Assistant Attorney-General, for the State.

(1) The reprimand of the court was sufficient under the circumstances. The only exception was: "Exceptions saved." No one can tell whether the exception was taken to the remark of the assistant circuit attorney or to the court for not further rebuking the assistant circuit attorney. If appellant wanted this ruling of the court reviewed, he should have objected and excepted to the ruling of the court on the specific ground that the court's rebuke was not sufficiently severe. (2) In his closing argument, Mr. Rudolph stated, in substance, that he believed the appellant guilty or else he would not be prosecuting him.

The argument as preserved in the record was merely an expression of the opinion of the assistant circuit attorney, drawn from all the facts and circumstances which had been proven in this cause. It was perfectly justifiable under the facts disclosed by this record, and was not error. Habel v. State, 28 Tex. App. 588; Young v. State, 19 Tex. 536; Kennedy v. State, 19 Tex. 618; State v. Mack, 45 La. Ann. 1155; State v. Millineier, 102 Ia. 692; State v. Beasley, 82 Ia. 83; State v. Carter, 100 Ia. 509; Ross v. State, 57 Pac. (Wyo.) 924. (3) Mr. Rudolph did not mean to advocate mob law or lynch law, nor did he mean to convey the idea in his argument that if this appellant should be acquitted such a condition would be brought about. He was merely speaking in general terms as to the failure of jurors to convict for violation of criminal laws. Scott v. State, 7 Lea (Tenn.) 235. Though improper language of counsel for the State, in argument or otherwise, in a criminal case, has been objected to by defendant, and though an exception has been taken and the language has not been withdrawn, it is not necessarily a ground for reversal. The conduct of the trial being a matter resting in the sound discretion of the trial court, that discretion will not be interfered with except in a case of manifest abuse prejudicial to the accused. Inman v. State, 72 Ga. 269; Combs v. State, 75 Ind. 221; Ford v. State, 34 Ark. 649; People v. Van Zile, 73 Hun (N. Y.) 534; State v. Surles, 117 N. C. 720; Walker v. State, 28 Tex. App. 503; Atkins v. State, 11 Tex. App. 8; State v. McGahey, 3 N. D. 293; State v. Turner, 36 S. C. 534. The language used by the State's counsel, though perhaps subject to censure, was not, in view of all the evidence and circumstances attending the trial, such grave departure from the proper line of argument as to necessitate a reversal of this cause. The jury, under the evidence, could not have returned any other verdict but that the defendant was guilty as charged. State v. Miles, 199

Mo. 553; State v. Barrington, 198 Mo. 91; State v. Summar, 143 Mo. 234. As a final contention, appel- lant urges that he is entitled to an absolute discharge by this court. The facts in this case are entirely dif- ferent from those in the case of State v. Headrick, 179 Mo. 300. In that case both counts of the indict- ment charged but a single offense, and were submitted to the jury, which found the defendant guilty on one and not guilty on the other. The case at bar is gov- erned by the case of State v. Whitton, 68 Mo. 91.

BROWN, J.—Defendant was convicted in the cir- cuit court of St. Louis city of the crime of arson in the third degree, as defined in section 4511, Revised Statutes 1909, and appeals from a judgment fixing his punishment at imprisonment in jail for one year.

On August 25, 1909, defendant was conducting a drug store at Frieda and Gravois in St. Louis city. The stock consisted of drugs, stationery, cigars and sundries, all of which, including the house where they were located, were owned by Lucy Hess, the wife of defendant. The stock of drugs, stationery, shelving and fixtures, was at the time of the alleged crime, in- sured in favor of said Lucy Hess, as follows: $1800 on stock of goods, and $700 on fixtures; total insurance, $2500.

The indictment is in two counts. In the first, defendant is charged with burning the stock of drugs, stationery, cigars and shelving belonging to his wife; which charge, if true, would under section 4512, Re- vised Statutes 1909, amount to arson in the fourth degree, and is punishable by imprisonment for not less than six months. In the second count of the indict- ment, he is charged with burning the same property with intent to defraud the companies in which the property was insured. This crime is denounced by section 4511, Revised Statutes 1909, as arson in the

third degree; and is punishable by imprisonment for not less than twelve months.

At the close of the evidence, the court of its own motion withdrew from the consideration of the jury the first count of the indictment, and the jury convicted defendant on the second count, and fixed his punishment at twelve months in jail.

Defendant, a physician, purchased a drug store in St. Louis several months before the alleged crime was committed, taking title thereto in the name of his wife. It seems that the store was not located to suit the defendant at the time of the purchase; at least, he moved the stock twice, finally establishing it in a wooden building owned by his wife at Frieda and Gravois, which building served both as a residence and store.

The defendant was at the drug store alone on the night of August 25, 1909. Near midnight, three boys, George Krissler, Albert Krissler and Ben Dawley, aged from eleven to fourteen years, who claimed to have been out to a moving picture show, came to defendant's store and sat down on the front steps. They testify their attention was attracted by a noise inside the store room, and looking through the glass front, saw the defendant standing there in a night robe, striking matches. Within a few minutes thereafter these boys saw fires burning inside the store, whereupon they sent in a fire alarm; and about eight minutes after the alarm was sent in, two policemen and several employees of the fire department came on the scene.

While the fires were burning, the defendant came out of a side door of the building, dressed in a night robe and carrying a suit of clothes under his arm. He also carried some money and jewelry in a pocket of his night robe. One of the policemen immediately arrested the defendant, and after allowing him to put on his clothes, accompanied him into a bedroom of the

burning building, pursuant to a request of defendant, to be allowed to obtain some additional clothing from a closet. The closet was locked, and after a search the key thereto was found on the floor. Upon unlocking the closet door, no clothing was found, but a fire was burning in the closet.

One witness testified that a few days before the fire defendant said he did not like his location very well for a drug store; had more stock and fixtures than he could carry insurance on, and a fire would cause him great loss. Defendant also asked said witness if it was necessary to have the signature of the president of an insurance company on a policy of insurance; and also inquired about the location of fire alarm boxes.

A policeman who entered the building stated that he found fires burning in four places, two on each side of the storeroom near the floor; that holes had been made in the walls and the fires started with excelsior and small pieces of wood; that some of the shelving had burned and a ledger, which was leaning against one of the fires, was burning. That he saved part of the ledger.

Other witnesses who examined the building after the fire, testified that the fires appeared to have begun near the ceiling and burned downward toward the floor.

Defendant's wife claimed damages to the stock of drugs and shelving by reason of the fire, and received from the insurance companies $900 on that account.

Defendant denied the crime and testified that the three boys (Krissler brothers and Dawley), who claimed to have seen him striking matches, were unfriendly to him; that they were street loafers, frequently slipping into his store and stealing cigarettes and other small articles; that about eight o'clock the night of the fire, he came into his store through the side door and found these boys in there with their

hands full of cigars and candy. He caught them, took the goods away from them, and after opening the front door, kicked them out. They made considerable noise over being kicked out, and defendant threatened to call the police before he could get them to leave. The defendant was strongly corroborated on this point by one Cunningham, who came into the store about the time the boys were being kicked out. He heard one of the boys curse the defendant and threaten to get even with him. The witness Cunningham, and one other witness, testified that they had on different occasions, seen the Krissler boys and Dawley steal cigarettes and other articles at defendant's drug store, and run off with them.

Defendant testified that he went to bed at ten-thirty the night of the fire, after barring the front door of 'his store and propping the side door from inside. He was awakened by someone beating on the front or side of the house; and found the side door standing open.

The defendant purchased the stock of goods and fixtures which he is charged with burning, for $1800. Shortly after the purchase, defendant told several persons he had been "done up awfully" by the misrepresentations of the man he bought of. It does not appear whether this remark referred to the lack of trade at that point or to the quality or quantity of the goods bought. An insurance adjuster estimated the value of the stock of drugs at from $1200 to $1500 at the time of the fire. This estimate did not include fixtures.

In applying for his merchant's license some months before the fire defendant placed the value of his stock at $2000. Defendant testified to numerous additions to the stock of goods and fixtures; that on July 28th (after the insurance was written) he made one purchase of stock amounting to $1500; and that

at the time of the fire, the stock of goods and fixtures were worth $4500.

Henry Schmitt and Phillip Knebel. who on July 9, 1909, placed the insurance on the stock of goods which defendant is charged with burning, testified that the defendant did not apply to them for the insurance, but that on four or five different occasions they solicited him to insure, before it was written. Mr. Schmitt, who wrote the insurance, after examining defendant's stock, testified that he had been in the fire insurance business for forty years, and was familiar with the value of drugs and fixtures. Mr. Knebel visited the store after the insurance was written and observed that the stock of drugs had been increased.

John Crouch, assistant sales manager for the Milliken Drug Company, and apparently well informed in the drug business, together with one Cunningham, who also seemed to be familiar with the drug business, inventoried the stock of drugs after the fire, and gave it as their opinion that the stock was worth at the time of the fire at least $3000 to $3500. One John Chittenden, engaged in selling drug specialties, visited the store in July before the fire, and estimated that defendant then had a $3000 stock.

Defendant testified that his last purchase of drugs was paid for with money which his wife kept in a safe deposit vault. The house where the store was located was mortgaged for $1200. It was also insured.

Three witnesses possessing some acquaintance with the defendant, testified that his reputation was good as far as they knew; never having heard anything derogatory of his honesty before the alleged crime was committed.

To secure a reversal, defendant makes the following assignments of error:

1. That the action of the trial court in taking from the jury the first count of the indictment was equivalent to an acquittal on that count; and that as

the same offense was charged in the first count as in the second, the acquittal of defendant on the first, amounts to an acquittal on the second.

2.  That the judgment should be reversed without remanding, because the State failed to prove that any of the property described in the indictment was burned.

3.  That the circuit court committed reversible error in allowing the assistant circuit attorney, over his objection, to make improper remarks to the jury.


OPINION

The withdrawal of the first count of the indictment from the consideration of the jury, while it amounted to an acquittal of the charge contained in that count, did not work an acquittal of the defendant of the charge contained in the second count.

The case of State v. Headrick, 179 Mo. 300, does not sustain the theory of defendant. In the Headrick case, both counts of the indictment charged exactly the same offense, to-wit, assault with intent to kill; and it was held that a verdict finding the defendant not guilty under one count and guilty under the other, could not stand. Here, we have a different situation. The charge of burning the goods with intent to defraud the insurance companies was a different accusation from the ordinary charge of arson in burning the same property without intent to defraud.

Defendant's contention that there was no evidence that any of the insured personal property was burned, is not borne out by the record. Officer Short, who entered the building while the fire was burning, stated that some of the shelving was burned near the window, also a ledger. There was further proof that part of the insured personal property was burned.

The assistant circuit attorney in his argument to the jury, said:

"If you by your verdict set this man free on this mountain of testimony that I have brought here before you for the last week; if you turn this man loose, then I say to you the courts of justice will be sowing the seeds of discord and dissatisfaction with our system of government.

"Mr. Walsh: We object to that as improper.

"The Court: You may proceed.

"Mr. Walsh: We object to the court's failure to rule.

"The Court: Objection overruled. You may proceed."

To which ruling of the court the defendant excepted.

"Assistant Circuit Attorney: I say you will be sowing the seeds of discord and dissatisfaction, from which we are bound to reap a harvest of mob law and violence.

"Mr. Walsh: We object to that as absolutely improper.

"The Court: You may proceed. Objection overruled.

"Assistant Circuit Attorney: I owe a duty when I come in here as prosecutor in this court, to not only prosecute men that I believe guilty; but I also owe a duty to men I believe innocent to turn them free; and I am free to say that if in this case I did not *believe* this man guilty I would not be trying him here today.

"Mr. Walsh: I object to that.

"The Court: Objection overruled."

To which ruling of the court defendant excepted.

"Assistant Circuit Attorney: I would not have spent a week trying this case if I had *believed* him innocent. Do you believe these boys lied on that very night when they saw these fires? They went out there and turned in the fire alarm, and then they came back to the fire and then told the police about it; told their

story to the police. On the next morning didn't they come up here in this room on the third floor, and they laid the matter before the warrant officer, and told the story; and they don't issue warrants up there unless they find out crimes have been committed.

"Mr. Walsh: We object to that, as strictly against the court's instruction.

"The Court: That is very objectionable."

Most of the foregoing argument was improper and prejudicial to defendant.

To hold up before a jury the horrors of mob law is not a proper method of securing verdicts of conviction. Juries should convict on evidence that crimes have been committed; and not through a fear that all law will be set aside and a reign of anarchy substituted. [State v. Jackson, 95 Mo. 623, l. c. 653.]

The assistant circuit attorney appears to have been angered by the fact that defendant had in some measure impeached the leading witnesses for the State, by evidence that they were thieves; and in his zeal to secure a conviction, appealed to the jury to convict the defendant because he (the prosecutor) *believed* him guilty, and the party who issued the warrant believed him guilty. The issue of the warrant was no evidence of the defendant's guilt; and the personal belief of the prosecutor in defendant's guilt furnished no grounds for a conviction; because that belief might have been based on matters which were not before the jury in the form of evidence. However, if the prosecutor was personally known to the jurors, as a man in whose judgment and veracity they had confidence, the argument may have had much weight in securing the verdict. [State v. Furgerson, 152 Mo. 92; State v. Wigger, 196 Mo. 90; State v. Phillips, 233 Mo. 299.]

We are reluctant to reverse judgments on account of improper remarks of attorneys. When the proof of guilt is clear from the mouths of disinterested

and credible witnesses, we seldom reverse judgments for improper arguments, because in such cases a verdict of guilty would likely have been returned, regardless of the improper remarks; but here, the proof is strong that the chief witnesses for the State were angry at defendant because he caught them stealing, and kicked them out of his store. In demanding convictions on such testimony, prosecutors should confine themselves to legitimate arguments.

The judgment in this case must be reversed, because of the improper argument of the prosecutor.

By withdrawing the first count of the indictment after the jury was sworn, the defendant was acquitted of the charge contained in that count, and cannot again be tried for the crime of arson in the fourth degree. [Sec. 23, Art. 2, Constitution of Missouri; State v. Manning, 168 Mo. 418.]

Upon a retrial, the court should instruct the jury that although they may find that defendant burned the goods, as charged, they must acquit him, unless they believe such burning was done with the intent to defraud the companies in which the property was insured.

The judgment is reversed and the cause remanded. *Ferriss, P. J.,* and *Kennish, J.,* concur.