## THE STATE v. JAMES W. HELTON, Appellant.

**Division Two, February 17, 1914.**

1. **CONSTITUTIONAL STATUTE: Title: Repealing Section and Enacting New Section; Abortion.** Where the title to a bill expresses an intention to repeal a certain section of the Revised Statutes and to enact a new section in lieu thereof, the provisions of the section repealed must be looked to for the purpose of ascertaining if the same subject has been dealt with in both sections; and if the section repealed denounced as a crime the use of any instrument upon a woman pregnant with a quick child with intent to destroy such child, when such act is not necessary to preserve the life of the mother, and the only material change made in said section by the new section, in so far as it relates to the act of which defendant has been convicted, is that the amendment makes it a felony to unnecessarily use any instrument upon a woman with intent to promote a miscarriage or abortion, whether the woman be pregnant or not at the time such instrument is used, the purpose of the amendment is sufficiently comprehended in the title, for the purpose of both statutes was to prevent criminal abortions, and the amendment was designed to prevent all attempts to bring them about.

2. ———: ———: ———: ———: **Two Separate Crimes.** And while the amended section creates two separate crimes, namely, the "felony of abortion" and manslaughter by causing the death of a pregnant woman or her child, the two crimes are so closely related that it was not a violation of the Constitution to include them in one section.

3. **REMARKS OF PROSECUTOR: This Serpent.** A remark by the special prosecutor in his opening argument in a case where a physician was being tried for criminal abortion that "this girl never had a breath of slander against her until this serpent crossed her path," under the circumstances of this case, where the remark received the express approval of the court, and the evidence of defendant's guilt is very meagre and unconvincing, and the prosecutor undertook to secure a conviction by arousing prejudice in the minds of the jurors through the use of epithets and other improper argument, was reversible error.

4. **ABORTION: Insufficient Evidence: Suspicion.** No one can be deprived of his liberty upon evidence which is only strong enough to arouse a suspicion of guilt. The defendant, a physician forty-five years of age, was convicted of committing "the felony of abortion" on an unmarried woman, on July 9, 1912, by inserting metal instruments into her womb. He admitted he had sexual intercourse with her on June 5th and twice thereafter. She testified that on May 15th he walked with her to a place near a cemetery and "by placing a handkerchief saturated with some kind of sweet-smelling stuff to her nose and mouth" caused her to immediately become unconscious, and while she was in that condition he took her into a near-by field and had sexual intercourse with her; that she was so completely overcome by the anaesthetic so applied to her nose and mouth while they were walking along the street that she scarcely realized the act of sexual intercourse until they were returning to her home, when defendant told her of it and requested her not to tell her family; that she missed her menstrual periods due to occur on May 25th and June 25th, and that, her health becoming poor, she informed defendant of her condition, and thereupon he called her to his office and inserted a metal instrument into her sexual organs; that he inserted these instruments twice in the month of June and again on July 9th; that he placed her on his operating chair and inserted a speculum in her vagina, and placed some wet cotton on the instrument and introduced it into her private parts; that on July 12th she took sick and remained in bed a week with a discharge from her womb; and she and her mother testified that during this sickness she had a copious menstrual flow and passed some pieces of clotted blood the size of a silver quarter. Two witnesses testified that on May 15th they saw her and defendant near the cemetery and as they returned home, and that he did not chloroform her or take her into a field or have sexual intercourse with her. Three physicians testifying for the defendant, and two for the State, completely discredit the testimony of prosecutrix that she was placed under an anaesthetic while walking along the street,

and testified that there was no known anaesthetic that would cause a person to immediately become unconscious if applied while walking in the open air; and they all testified that if she became pregnant on May 15th the foetus would have been too large to have been concealed in a blood clot the size of a silver quarter on July 12th. Two of these physicians, one called by the State and the other by defendant, testified that they were called to the home of the prosecutrix in the summer of 1912 to examine and find out if an abortion had been performed on her, and that upon such examination they did not discover any evidence of an abortion. Three witnesses corroborated prosecutrix that she was ill about July 12th, and four others testified that she was not ill at that time, but well and out on the streets almost daily. Two witnesses testified that prosecutrix admitted that her menstrual flow came at its regular time in May and June, and another that she had so testified at the preliminary hearing. Defendant denied that he had inserted any instrument into her womb, but admitted that after he had sexual intercourse with her in his office he inserted into her vagina a uterine forcep with some wet cotton for the purpose of cleansing her sexual organs and preventing conception; and an eminent physician called for the State testified that to produce abortion it was not usual to place cotton on the instrument to be inserted into the womb, but that cotton was sometimes introduced into the vagina for cleansing purposes. *Held*, that the evidence is insufficient to sustain a conviction, and the case having been carefully tried the defendant is discharged.

Appeal from Bates Circuit Court.—*Hon. C. A. Calvird,* Judge.

REVERSED.

John C. McKinley, J. F. Smith and W. O. Jackson for appellant.

(1) The section of the statute on which this proposition is bottomed is violative of section 28, article 4, of the Constitution, in that it contains matters not clearly set forth in the title thereto, and contains more than one subject which are not set forth in said title to said act. This present section of the statute, R. S. 1909, sec. 4458, corresponds to the amended statute passed in 1907, Laws 1907, p. 230, when the Legislature evidently aimed to amend the statute relating to manslaughter and designated in the Revised Stat-

utes of 1899 as section 1825. That section was one of
the manslaughter sections that had been running
through the statutes and was punishable as for death
of the mother or quick child, where the mother was
pregnant with quick child; the amendment of 1907
changed the offense and the name of the offense, from
manslaughter to abortion and likewise the punishment,
which in its essential elements took it out of the man-
slaughter statute entirely, but in the title of the bill no
notice of the radical change was given, the title of the
bill enacted in 1907, being, "An Act to repeal section
1825 of article 2, chapter 15, of the Revised Statutes
of Missouri, 1899, entitled 'Crimes and Punishments'
and to enact a new section (in lieu thereof, to be known
as section) 1825," and goes on in the body of the sec-
tion and provides that upon the doing of certain acts,
the physician, whether the woman be pregnant or not,
shall be guilty of "the crime of abortion" and pun-
ished, etc. This cannot be done in that way. Consti-
tution, sec. 28, art. 4; State v. Coffee Co., 171 Mo. 639;
State ex rel. v. County Court, 102 Mo. 537. (2) The
instructions asked by defendant and refused by the
court to the effect that the jury before they could con-
vict, must find and believe that defendant "knew or be-
lieved that the woman was pregnant," should
have been given. Under the evidence in this
case it was a proper cautionary instruction and
having been asked should have been given. Com-
monwealth v. Nailor, 29 Pa. Sup. Ct. 271. (3)
The court erred in directing attorney Dawson,
of counsel for the State, to "go ahead" in-
stead of rebuking him, for calling defendant a ser-
pent, to which defendant's counsel objected. Evans v.
Trenton, 112 Mo. 390; State v. Young, 99 Mo. 666;
State v. Ulrich, 110 Mo. 350; State v. Fisher, 124 Mo.
460; State v. Bobbet, 131 Mo. 328. Likewise the court
should have rebuked Prosecuting Attorney Chastain
for saying in his closing argument: "The witnesses

from Green City all knew that he had been charged with rape or an assault with intent to rape Jessie Cameron.''

*John T. Barker,* Attorney-General, and *Ernest A. Green,* Assistant Attorney-General, for the State.

(1)    The objection made by the appellant in his motion to quash this information, viz., that Sec. 4458, R. S. 1909, upon which this prosecution is bottomed, is unconstitutional and void, is answered by the case of State ex rel. v. Shields, 230 Mo. 102.    (2)    Under the fourth, fifth and sixth grounds of the motion to quash, it was contended that Sec. 4458, R. S. 1909, upon which this prosecution is based, is unconstitutional because the title to the legislative act creating this offense did not fully set forth the matters contained in said section.    The title to this act clearly expresses the subject of the enactment and therefore the section is not violative of Sec. 28, art. 4, of the Constitution.    The general rule on this subject has always been that legislation by reference to sections is valid.    State ex rel. v. County Court, 128 Mo. 427.    It has ben generally held that although the provisions of Sec. 28, art. 4, of the Constitution are mandatory, yet that they should be liberally construed.    The purpose of the title is merely to indicate to the Legislature and the people in clear terms the general contents of the bill.    St. Louis v. Tiefel, 42 Mo. 578; State v. Miller, 45 Mo. 495; State ex rel. v. Miller, 100 Mo. 439; State ex rel. v. Bronson, 115 Mo. 271; Lynch v. Murphy, 119 Mo. 153; State ex rel. v. Slover, 134 Mo. 10; Gabbert v. Railroad, 171 Mo. 84; State v. Coffee Co., 171 Mo. 634; Ferguson v. Gentry, 206 Mo. 189.    If the title of an original act embraces the provisions of an amendatory act it is valid, although the title of the amendatory act is not of itself sufficient.    State ex rel. v. Ranson, 73 Mo. 78; State ex rel. v. Laughlin, 75 Mo. 358; State ex rel. v. Heege, 135 Mo. 112.    Mere generality

of the title will not vitiate an act unless it shows a
design to mislead. Some deference must be paid to
the decision of the Legislature as to the title. O'Con-
nor v. Transit Co., 198 Mo. 622. (3) It was proper to
prove by the defendant on cross-examination, as af-
fecting his credibility, the fact that he had
pleaded guilty to an assault upon one Jessie
Cameron. Defendant's conviction of other crimes
may be proven by the record thereof or de-
fendant's evidence on cross-examination. State
v. Spivey, 191 Mo. 87; State v. Blitz, 171
Mo. 530; State v. Thornhill, 174 Mo. 364; State v. Sas-
seen, 75 Mo. App. 197. (4) The verdict is not con-
trary to the law and the evidence. The State offered
evidence tending to prove every material fact essential
to establishing defendant's guilt, and under appropri-
ate instructions the jury returned a verdict of guilty.
This court will not, under such circumstances, convert
itself into a trier of facts and undertake to find a
different result from that of the jury. State v. Mat-
thews, 202 Mo. 147; State v. McCullough, 171 Mo. 574;
State v. Tetrick, 199 Mo. 100; State v. Williams, 199
Mo. 137. (5) The first instruction follows the lan-
guage of the statute creating the offense, and is suffi-
cient in every respect to fully define the offense. Sec.
4458, R. S. 1909; State v. Gow, 235 Mo. 307; State v.
Castro, 231 Mo. 398; State v. Dean, 85 Mo. App. 473;
State v. Van Houten, 37 Mo. 357; State ex rel. v.
Shields, 230 Mo. 91. It is true that this instruction
does not require the jury to find that the abortion was
not advised by a duly licensed physician to be neces-
sary, but that exception in the statute is not open as a
defense to a duly licensed physician. Sec. 4458, R. S.
1909; State v. Gow, 235 Mo. 324. (6) The appellant
complains that the trial court permitted improper ar-
gument on the part of State's counsel. This assign-
ment is not subject to review, as the alleged improper
remarks are not set out in the motion for a new trial,

where they should have been in order to be reviewable. State v. Jeffries, 210 Mo. 337; State v. Baker, 209 Mo. 451; State v. Clapper, 203 Mo. 384. Furthermore, we do not find that any request was made at any time to rebuke the assistant prosecuting attorney for calling the defendant "a serpent," nor do we find that any exception was taken to the failure of the court to reprimand the prosecuting officer. Consequently the remark is not before this court for review. State v. Rasco, 239 Mo. 580; State v. McMullin, 170 Mo. 632.

BROWN, J.—Defendant, a practicing physician forty-five years of age, was convicted of committing "the felony of abortion" upon one Ruby Seese, in Bates county, Missouri, on July 9, 1912. The first count of the information charges the crime to have been perpetrated by inserting metal instruments into the womb of the prosecutrix with intent to cause an abortion; and the second count charges the administering of drugs to prosecutrix with the same felonious intent. At the close of the State's testimony, the prosecuting attorney elected to stand upon the first count charging an unlawful use of instruments, as denounced by section 4458, Revised Statutes 1909.

From a judgment finding defendant guilty and fixing his punishment at a fine of $200 and one year in the county jail, he appeals.

The evidence discloses that about ten o'clock on the evening of July 9, 1912, while defendant and prosecutrix were leaving his office, they met the father of prosecutrix. He was in an angry mood and assaulted defendant on the street. On the same night the father also caused the defendant to be arrested on a charge of rape upon prosecutrix. The defendant was locked up on said charge of rape for some three months, when that charge was voluntarily dismissed by the State, and the information filed charging him with the felony of abortion.

To prove a motive for defendant's alleged acts in trying to produce an abortion upon prosecutrix, the State introduced evidence tending to prove that defendant had kept company with her for several weeks, and that he had ravished her on May 15, 1912. Her version of this transaction is that on the night of May 15th the defendant walked with her to a point near a cemetery in the suburbs of Butler, Missouri, and, "by placing a handkerchief saturated with some kind of sweet-smelling stuff to her nose and mouth" caused her to immediately become unconscious, and while in that condition he took her into a near-by field, and had sexual intercourse with her. That she was so completely overcome by the anaesthetic so applied to her nose and mouth by defendant while they were walking along the street that she scarcely realized the act of sexual intercourse until they were returning to her home, when defendant told her of it and requested her not to tell her family.

Prosecutrix further testified that she missed her menstrual periods due to occur on May 25 and June 25, 1912, and that, her health becoming poor, she informed defendant of her condition, and thereupon he called her to his office and inserted a metal instrument into her sexual organs.

Two witnesses for the defendant testified that they were driving along the road at the point where prosecutrix claimed she was taken into a field and ravished. Those witnesses stated that they saw defendant and prosecutrix near the cemetery as they returned home, and according to their evidence defendant did not either chloroform or take prosecutrix into a field, nor have sexual intercourse with her on that occasion. Three physicians testifying on behalf of defendant, and two on behalf of the State, completely discredit the evidence of prosecutrix to the effect that she was placed under an anaesthetic while walking along the

· street.  All five of these physicians concurred in the opinion that there was no known anaesthetic which would cause a person to immediately become unconscious if applied while the victim was walking in the open air—that it would require from eight minutes to a half an hour to chloroform an adult person while walking or standing erect, if it could be done at all.

The defendant himself denied the alleged act of intercourse on May 15th, but admitted that he did have sexual intercourse with prosecutrix on June 5th at his office, and twice thereafter at the same place.

The prosecutrix testified that defendant inserted a metal instrument into her private parts at his office twice in the month of June, and again on the night of July 9, 1912.  That on July 12, 1912, she took sick and remained in bed a week with a discharge from her womb.  She and her mother both testified that during this sickness she had a heavy menstrual flow and passed some pieces of clotted blood the size of a silver quarter.  No physician was called during that sickness.  The five physicians who testified in the case were unanimous in the opinion that if the prosecutrix became pregnant from the alleged act of sexual intercourse on May 15th the foetus would have been too large to have been concealed in a blood clot the size of a silver quarter on July 12th of the same year.

Doctor Chastain, called as a witness by the State, and Doctor Foster, who testified for defendant, stated that they were called to the home of the prosecutrix to examine her and find out if an abortion had been performed upon her, and that upon such examination they did not discover any evidence of an abortion. The evidence is not clear as to when this examination was made, except that it was in the summer of 1912. Doctor Chastain testified that there was "a little abrasion of the mucous membrane of her uterine canal—very slight," and not sufficient to cause her to abort.

There was evidence of three witnesses tending to corroborate prosecutrix that she was ill about July 12, 1912, while four other witnesses testified that she was not ill at that time, but was well and out on the streets almost daily.

There were also two witnesses who testified that prosecutrix admitted that her menstrual flow came at its regular time during the months of May and June, 1912. Another witness, who was present at the preliminary examination when defendant was charged with rape, stated that at said preliminary the prosecutrix swore that her monthlies were regular during May and June, 1912. Her evidence at said preliminary was not preserved in writing.

According to the evidence of prosecutrix defendant only had sexual intercourse with her twice—once on May 15, 1912, at the time she contends that she was placed under the influence of an anaesthetic, and again on July 9th at defendant's office; that twice during June, and again on July 9th, defendant placed her on his operating chair and inserted a speculum in her vagina and placed some wet cotton on a metal instrument and inserted it into her private parts. On this point the prosecutrix was interrogated, and gave answers, as follows:

"Q. · Did he tell you what he was doing it for? A. Yes, sir.

"Q. What did he say about it? A. To keep me out of a family way.

"Q. Did you say *get* or *keep?* A. To get."

Prosecutrix further testified that the insertion of the instrument into her private parts made her feel weak and sick. On this point defendant denied that he had inserted any instrument into the womb of prosecutrix, but admitted that after he had sexual intercourse with her in his office he inserted into her vagina a uterine forcep with some wet cotton for the purpose of cleansing her sexual organs and preventing concep-

tion. That at no time did he have any cause to think that she was pregnant, and that at no time did he insert any instrument into her womb or do anything to her with the intention of causing an abortion.

On the point of using instruments Doctor Chastain, a physician of thirty years' experience, called by the State, testified on cross-examination that it was sometimes necessary to produce an abortion to save the life of a pregnant woman, in which event it was not usual to place cotton on the instrument to be inserted into the womb, but that cotton was sometimes inserted in the vagina for cleansing purposes.

Some ten witnesses testified that prior to his arrest on July 9th the defendant sustained a good reputation as a law-abiding and moral man. Such further evidence, as is necessary to a full understanding of the case, will be recited in our opinion.

For reversal defendant relies upon (1) the unconstitutionality of the law upon which the judgment of conviction rests; (2) improper remarks of the assistant prosecuting attorney; (3) lack of substantial evidence to support the conviction; and, (4) admission of improper evidence.

## OPINION.

The first ground relied upon for reversal is that section 4458, Revised Statutes 1909, under which defendant was convicted, is invalid, because the legislative bill under which said section was

Law Constitutional. enacted embraces more than one subject, and the purpose of the bill was not clearly expressed in the title of such bill, as required by section 28, article 4, Constitution of Missouri.

The title to said bill (Laws 1907, p. 230) expresses an intent to repeal section 1825, Revised Statutes 1899, and to enact a new section in lieu thereof, so that we must look to the provisions of said section 1825, supra,

and ascertain if the same subject has been dealt with in the new section as in the one which was repealed. [State ex rel. Dickason v. County Court, 128 Mo. 427.]

Section 1825, Revised Statutes 1899, denounces as a crime the use of any instrument upon a woman pregnant with a quick child with *intent* to destroy such child, when the act is unnecessary to preserve the life of the mother. The only material change in said section, as amended in 1907, so far as it relates to the act with which defendant is charged, is that the amendment makes it a felony to unnecessarily use any instrument upon a woman with intent to promote a miscarriage or abortion, *whether the woman be pregnant or not* at the time such instrument be so used.

It is undoubtedly true that the purpose of both statutes was to prevent criminal abortions, and the General Assembly doubtless believed the best plan to extirpate this character of crimes was to prevent all attempts to bring them about. It is true that section 4458, supra, as amended, creates two separate crimes, to-wit: the "felony of abortion," and manslaughter by causing the death of a pregnant woman or her child; but the two crimes are so closely related that we are constrained to hold that it was not a violation of the Constitution to include them both in one section; but it would doubtless have created much less confusion if the two crimes had been dealt with in separate sections.

In the recent case of State ex rel. Evans v. Gordon, 245 Mo. 12, the constitutionality of section 11830, Revised Statutes 1909, was challenged on the same grounds as the law now in judgment. The title to the law construed in the Evans case simply purported to add two new sections to the chapter entitled "Of the Treasury." Prior to that enactment the State Treasurer had not been charged with any duties pertaining to contested elections, and it was urged that as section 11830, supra, was intended to affect election con-

State v. Helton.

tests by withholding the salary of contestees such pur-
pose should have been expressed in the title of that
bill, but this court, In Banc, ruled adversely to the
contention and upheld the law.  If the title to a legis-
lative bill is not misleading, it is seldom that the law
will be invalid on the ground that all the purposes of
the bill are not fully expressed in the title.   [O'Con-
nor v. Transit Co., 198 Mo. l. c. 638-9.]

The designation of the crime of attempting to com-
mit a criminal abortion as the "felony of abortion" is,
in a broad, general sense, a misnomer, but it is not
permissible to allow a law to perish because it is not
couched in grammatical language.  The fact that the
specific acts which constitute the crime are set out in
the statute makes the legislative purpose so plain that
such intent is not greatly obscured by the use of the
words "felony of abortion."

This precise point was raised in the case of State
ex rel. v. Shields, 230 Mo. 91, and the issue there de-
termined adversely to the contention of defendant here.
We are content to abide the conclusion reached in
that case.

II.   In his opening argument the special prose-
cutor said:

**Remarks of Attorney.**    "This girl that never had had a
breath of slander against her until this
serpent crossed her path—

"By Mr. Jackson:  Object to him calling defend-
ant a serpent.

"By the Court:  Go ahead.

"To which defendant excepted and now excepts."

The foregoing remark of the special prosecutor
was assigned as error in defendant's motion for new
trial, and is urged here for reversal.  Under the pe-
culiar facts of this case, we find that the foregoing
remark, receiving as it did the express approval of
the trial court, constituted reversible error.

Improper arguments are a class of errors unto themselves, and no hard-and-fast rule can be laid down by which their vicious effects shall be measured. When the evidence of guilt is overwhelming and the verdict is not unusually severe, it is difficult to say that the improper remarks produced any harmful effect. Such was our decision in the case of State v. Baker, 246 Mo. 357, l. c. 376. Quite a different rule arises in cases like the one at bar, where the evidence of guilt is very meager and unconvincing, and the prosecutor undertakes to secure a conviction by arousing prejudice in the minds of the jury through the use of epithets and other improper argument. [State v. Hess, 240 Mo. 147, l. c. 160.]

III. After a careful reading of the record, we are convinced that the evidence is not sufficiently substantial to support the judgment of conviction. The evidence of prosecutrix is discredited, and, **Evidence Insufficient.** I might say, proven to be untrue by other disinterested witnesses called by the State. That prosecutrix could not have been ravished, as she testified she was, on May 15, 1912, is established by the testimony of eminent physicians called by the State—one of them a member of the State Board of Health. Her testimony to the effect that she had a miscarriage about July 12, 1912, is likewise disproved by the State's own witnesses. This leaves the one fact to be determined: whether or not defendant did use instruments upon her with intent to promote a miscarriage or abortion. The defendant admits using some wet cotton with forceps in her private parts to prevent conception. Doctor Chastain, an old and experienced doctor called by the State, testified that a physician seeking to cause an abortion would not place cotton on his probe to be inserted into the womb. That, ordinarily, cotton would only be used for cleansing purposes; so at this vital point the defendant is cor-

roborated, and the prosecutrix again discredited, by the State's own witnesses. When the prosecutrix was first asked if the defendant stated what his object was when he inserted the instrument into her private parts, she replied: "To *keep* me out of a family way." It is true that when prompted by the prosecuting attorney she testified that defendant stated to *get* her out of a family way. Defendant's counsel did not object to the prosecutrix being thus improperly led, and the most important evidence in the whole case placed in her mouth by the prosecuting attorney; but we have a right to consider the method by which this evidence was elicited in determining whether, under all the circumstances, it was sufficient to support the verdict.

The prosecuting attorney or the father of prosecutrix caused two eminent physicians to make a physical examination of the prosecutrix to see if an abortion had been performed on her. One of those physicians was summoned by the State, and the other by the defendant, and they both testified that they found no evidence that an abortion had been performed; neither did they find such wounds, bruises or lacerations in or upon her womb as to indicate that an attempted abortion had been committed with instruments.

The record does not contain such substantial evidence that defendant committed the crime of which he was convicted as the laws require. No one can be deprived of his liberty upon evidence which is only strong enough to arouse a suspicion of guilt. [State v. Francis, 199 Mo. 671; State v. Johnson, 209 Mo. 346.] This view renders it unnecessary to consider alleged errors in the admission of evidence. The case was carefully tried after elaborate preparation on both sides, and we do not think any useful purpose would be subserved by remanding it for a new trial.

We, therefore, reverse the judgment of the trial court and discharge the defendant. *Walker, P. J.,* and *Faris, J.,* concur.