STATE OF MISSOURI, Respondent, v. THOMAS TOLSON, JR., Appellant.
—No. 40655.—215 S. W. (2d) 438.

Division One, October 11, 1948.

Rehearing Denied, December 13, 1948.

420

*Errol Joyce* for appellant.

*J. E. Taylor,* Attorney General, and *W. Brady Duncan,* Assistant Attorney General, for respondent.

[438] BRADLEY, C.—Defendant was convicted of murder in the second degree; punishment was fixed by the jury at 10 years in the penitentiary; his motion for a new trial was overruled and he appealed.

Shortly after midnight of October 27, 1946, defendant struck and killed Elmer Lee Collins with a knife in Brunswick, Chariton County. Defendant and deceased were young colored men, both resided in Brunswick; had known each other since they were boys. Ruby Anderson, colored, operated a colored restaurant in Brunswick and the trouble occurred in the Anderson restaurant. There had been no prior trouble between defendant and deceased. Defendant was in the music room of the restaurant and was putting a nickel in the music machine. Deceased came in and shoved him; defendant asked deceased why he was doing that; deceased shoved him again and said for him "to get the hell out of the way." Defendant then hit deceased; a scuffle followed. They were separated; deceased was then taken by the restaurant proprietor Anderson out of the music room into the adjoining dance room. Defendant also went into the dance room. Deceased "got away from Anderson" and "rushed toward" defendant; "had his hand drawn back", and said, according to defendant, "I will get the son of a bitch." Defendant struck deceased on the head with a knife; the brain was entered by the blade and deceased died in about half an hour.

422

Error is assigned on instruction No. 3 and on argument by the prosecuting attorney, and an assistant attorney general.

The trial court instructed on murder in the second degree, on manslaughter, and on self defense. Instruction No. 3 was the instruction on murder in the second degree. This instruction, in part, follows:

"The court instructs the jury that 'murder [439] in the second degree' is the killing of a human being wilfully, premeditatedly and with malice aforethought. 'Wilfully' means intentionally and not done by accident. 'Premeditatedly' means thought of beforehand, for any length of time, however short. 'Malice' means that condition of the mind which prompts one to do a wrongful act intentionally, and to take the life of another without legal justification or excuse. It does not mean mere spite, hatred, or ill will, but it signifies the state of disposition which shows a heart regardless of social duty, and fatally bent on mischief; and 'malice aforethought' means that the act was done with malice and premeditation. 'Malice' as used here, may be presumed from the intentional use of a deadly weapon in a manner likely to produce death."

The instruction went on to hypothesize the facts, directing a verdict of murder in the second degree if found that defendant "wilfully, premeditatedly and of his malice aforethought" stabbed and killed deceased. The complaint is on that part of the instruction reading, "malice, as used here, may be presumed from the intentional use of a deadly weapon in a manner likely to produce death."

Respondent makes two contentions respecting instruction No. 3. First, that under Sec. 4125 R. S. 1939, Mo. RSA, Sec. 4125, the complaint on the instruction is not properly preserved for review in the motion for a new trial, and second, that the instruction was proper. Sec. 4125 provides that the motion for a new trial "must set forth in detail and with particularity, in separate numbered paragraphs, the specific grounds or causes therefor." The assignment in the motion for a new trial on the instruction follows: "(1) That the instruction is not warranted by the facts, not applicable to the fact and is not supported by the evidence; (2) that it is erroneous, legally insufficient and unauthorized; (3) that it illegally shifts the burden of proof to defendant of essential averments of the information; (4) that it erroneously declares a rule of procedure that imposes an improper function upon the jury; (5) that it is confusing and calculated to, and did mislead the jury; (6) that said instruction fails to cover the law of second degree murder; (7) that said instruction does not define or adequately, properly or correctly inform and advise the jury on the question of excusable or justifiable homicide."

Defendant attacks only a portion of instruction No. 3. Such being so the motion for a new trial, under Sec. 4125, should have pointed out the portion complained of, and not having done so the assign-

ment is insufficient. State v. Peterson (Mo. Sup.), 154 S. W. (2d) 134, l. c. 138, and cases there cited. In the Peterson case, Sec. 4125 was quoted as to the requirements of a motion for a new trial in a criminal case and then the court said: "This requires that the motion point out the particular portion of the instruction objected to and the specific grounds for the alleged error." In State v. Bolhofner, 336 Mo. 1155, 82 S. W. (2d) 894, an instruction on murder in the second degree was given. The instruction told the jury that one "who wilfully, that is, intentionally, uses upon another at some vital part, a deadly weapon, as a pistol, must in the absence of qualifying facts, be presumed to know that the effect is likely to be death; and knowing this, must be presumed to intend death, which is the probable and ordinary consequence of such an act." The assignment in the motion for a new trial was that "the court erred in giving to the jury instruction number four (4) dealing with the presumption arising from the use of a deadly weapon. The defendant testified in his own behalf that he did not intend to kill deceased." It was held that the assignment was not sufficient under Sec. 4125. See also State v. Dollarhide, 337 Mo. 962, 87 S. W. (2d) 156, 157, and cases there cited; State v. Kaner, 338 Mo. 972, 93 S. W. (2d) 671, 673; State v. Foster, 355 Mo. 577, 197 S. W. (2d) 313, 320. We are constrained to rule that the point made on instruction No. 3 was not preserved for review in the motion for a new trial.

■ Edward W. Speiser, prosecuting attorney, and W. Brady Duncan, assistant attorney [440] general, argued for the state.* Mr. Speiser opened and Mr. Duncan closed.

Mr. Speiser in argument, said: "The defendant has one of the most capable criminal attorneys in the state, and you can just bet only the defendant took the stand in his behalf other than character witnesses, yet there was a whole crowd that saw this, don't you think he would have had them here, the fact is he didn't have them, wouldn't it have helped him, he had a lot of friends. Mr. Joyce (counsel for defendant): That is highly objectionable. The court: Sustained; the jury will disregard it."

Mr. Duncan, in argument, said: "Now it becomes your duty—whether or not you are going to uphold the law and stop this sort of thing, or are you going to permit these niggers to arm themselves with knives and guns and terrorize the community. Mr. Joyce: I object to that type of argument; it is highly prejudicial. The court: Sustained. . . . Mr. Duncan: I am not saying he ought to have a jail sentence, he committed an act that deserves a verdict, one to punish the party that committed the act; the reason is to save the rest of the men in the county; you should say you cannot do that; you've got to live within the law, and you cannot take the law into your own hands, and I will say to you gentlemen if you return a verdict of not guilty you are writing a license for everyone to carry

guns and knives. Mr. Joyce: That statement is unwarranted; highly prejudicial; calculates to prejudice the jury and is so intended and I ask that counsel be admonished. The court: Objection sustained; the jury will disregard the statement. (Mr. Duncan, continuing): Nevertheless they neither need knives or razors in a dance hall, and I say to you a verdict in this case will stop that thing. when you say to this boy that you must be punished. Mr. Joyce: I want to object to that statement; it is highly prejudicial; not proper argument, and I ask that counsel be admonished. The court: Overruled." Exception was saved.

In the brief defendant says that there was no evidence that anyone present at the time of the homicide was armed with a razor and that there was no evidence that anyone had a gun. Defendant says that the argument, especially about razors and guns, was unfair and unwarranted and that its prejudicial effect is reflected in the verdict for 10 years. It will be noted that all of defendant's objections to argument were sustained, except as to knives and razors in the dance hall, and defendant admitted he had a knife. He said that he had no knife of his own; that he picked up from the floor the knife he used upon deceased. Ruby Anderson testified that Gene Tolson, a cousin of defendant, was at the scene of the trouble and had a knife or a razor.

In support of the complaint on argument defendant cites: State v. Jackson, 336 Mo. 1069, 83 S. W. (2d) 87; State v. Mosier (Mo. Sup.), 102 S. W. (2d) 620; State v. Taylor, 320 Mo. 417, 8 S. W. (2d) 29; State v. Isaacs (Mo. Sup.), 187 S. W. 21; State v. Webb, 254 Mo. 414, 162 S. W. 622; Calloway v. Fogel et al., 358 Mo. 47, 213 S. W. (2d) 405. It will not be necessary to review these cases. They do not support defendant's contention that the argument constituted reversible error.

No complaint was made on the use of the term "niggers." And we might say that it is stated in respondent's brief that the word "negroes" was used and not "niggers."

The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.