243 S.W.2d 75 (1951)
STATE
v.
RHODEN.
No. 42453.
Supreme Court of Missouri, Division No. 1.
November 12, 1951.
*76 Tom A. Shockley, Waynesville, for appellant.
J. E. Taylor, Atty. Gen., Taylor L. Francisco, Asst. Atty. Gen., for respondent.
LOZIER, Commissioner.
Appellant, hereinafter called defendant, was convicted of assault with intent to kill, but without malice, and sentenced to three years imprisonment. He assigns error in the argument of, and the examination and cross-examination of witnesses by, the special prosecutor and in the trial court's failure to submit an instruction upon the issue of flight.
As defendant does not contend that the state did not make a submissible case, the facts can be briefly stated. With certain additions or qualifications, the issues here may be considered by quoting most of the statement in defendant's brief. The matters in parentheses are ours.
"The transcript of the record shows that on the night of October 25, 1948, defendant and Lola Elliott, wife of James Elliott (the prosecuting witness, a retired army captain, often referred to at the trial as "the captain") were arrested and charged with adultery. They were released on bond, and on the morning of October 26th, in separate cars, they started to leave the house where Mrs. Elliott had been staying in Pulaski County. James Elliott, Herbert Baird, and one or two other persons (the evidence showed that Elliott and Baird were unaccompanied), in separate cars, met the cars driven by Mrs. Elliott (defendant's) and defendant (Elliott's) and blocked the road. Elliott, Baird and defendant got out of their cars; a fight occurred. Defendant used a revolver. Baird used a shotgun, and apparently Elliott had no weapon. Elliott was shot (twice) by defendant and slightly wounded. Baird was shot and severely wounded by defendant and defendant received a slight wound either by shots from Baird's gun or from some weapon. (The evidence was that: defendant was not wounded; that Elliott, unarmed, walked by defendant's car, in which Mrs. Elliott was sitting, toward the other car; defendant got out and, revolver in hand, backed up the road a few feet; he flourished the weapon and threatened to kill Elliott; Elliott sat down in the front seat of his car, but, before he could close the car door, defendant ran up and fired 3 shots into the car, one of which struck Elliott; Elliott got out of the car and fell in the ditch; while Elliott was lying prone, defendant fired two more shots at him, one of which struck Elliott; defendant shot Baird, and ran and grabbed the shotgun which Baird had been holding after firing a shot in the air; Elliott and Baird then struggled with defendant and took the shotgun away from him.)
"The testimony of defendant and that given by Baird and Elliott is in rather sharp conflict. Baird testified that he fired the shotgun only to scare or distract the attention of defendant while he was shooting at Elliott. Elliott testified that defendant was scared and that he (Elliott) was attempting to recover his automobile, which he did recover, and that he was shot after he got into his automobile. Defendant testified (as to communicated threats by Elliott and) that he fired all shots in self-defense and because Baird had a shotgun drawn on him.
"The testimony shows that Mrs. Elliott had separated from her husband, James Elliott, and that either she or defendant rented a house a few miles from Waynesville, which was used by Mrs. Elliott as a residence. Defendant visited Mrs. Elliott at this home. She filed a suit for divorce in the Circuit Court of Pulaski County and, before that case was heard, the charge for illicit cohabitation was filed and the fight occurred. The adultery or cohabitation case was never tried. Defendant was never tried for shooting Baird. Most of the *77 testimony adduced by the State pertained to the association of defendant and Mrs. Elliott, and attempted to show that defendant, after the shooting, attempted to escape. Defendant testified that he had no intention of escaping, and in no manner engaged in flight." (Mrs. Elliott and defendant drove to Waynesville and talked to their attorney. They then went to Richland to see a doctor; they spent the night in a tourist resort and on the following morning went to Dixon where defendant was arrested.)
Defendant's first assignment is based upon the following argument of the special prosecutor:
"There are about two ways you can settle these things, one of them is to take a gun and go out here and do quick justice, and the best way to get that kind of a situation is to fail to do justice here this afternoon, and the other way is to come in here like law-abiding citizens and cut out this monkey business about name calling and big detective talk and all that and get down here and follow the law. Now, are you going to do justice; are you going to send this captain out here and tell him to do it? We are down here because we are trying to do things the right way. You send this man out here with a little old hundred dollar fine, you put him out here in this jail for three or four months and you are the ones who are responsible then when the law is not enforced. Don't you do that
"Mr. Breuer: We object to that line of argument.
"Mr. Bradshaw: follow the instructions the Court has given here.
"Mr. Breuer: Just a moment. I object to that line of argument as being inflammatory, improper argument; a threat to the jury as to what will happen if they don't convict.
"The Court: Objection sustained."
The latter portion was obviously an appeal to the jury to assess, as a crime deterrent, a more severe punishment than the statutory minimum. (Sec. 559.190, RS1949, Sec. 4409, Mo.RSA. This was covered in instant Instruction No. 3.) Such an argument was proper. See 53 Am.Jur., Trial, Sec. 467; Annotation 120 A.L.R. 502; State v. Greer, 321 Mo. 589, 12 S.W.2d 87; State v. Nasello, 325 Mo. 442, 30 S.W.2d 132; State v. Lynn, Mo.Sup., 23 S.W.2d 139, 141; State v. McBride, Mo.Sup., 231 S.W. 592; State v. Carter, 345 Mo. 74, 131 S.W.2d 546.
However, we shall assume that defendant's objection was to the entire argument quoted and that the objection was both sufficient and timely made. See State v. Smith, 355 Mo. 59, 194 S.W.2d 905; State v. Brickey, 348 Mo. 248, 152 S.W.2d 1055; State v. Leonard, Mo.Sup., 182 S.W.2d 548.
This argument was neither based upon evidence nor retaliatory. It was clearly improper in that it asked a conviction upon the suggestion that if the jury acquitted defendant, Elliott might "take a gun and go out there and do quick justice." There is a challenge in the question, "are you going to do justice, are you going to send this captain out here and tell him to do it?"
We have been unable to find a case involving a prosecutor's improper argument urging conviction on the ground that the prosecuting witness might "take the law in his own hands." In 23 C.J.S., Criminal Law, § 1105, p. 581, note 50, several cases are cited wherein arguments that relatives of the prosecuting witness either had not resorted to, or might resort to, violence, were held improper. In Flatt v. State, 117 Tex.Cr.R. 4, 36 S.W.2d 518, 519, a plea for conviction because defendant, if discharged, could "do the same thing" again was held an improper, inflammatory argument. We have no doubts as to the impropriety of the argument here.
However, the record shows that defendant's objection was promptly sustained. The trial court ruled "exactly as defendant's counsel asked him to rule." State v. Marshall, 317 Mo. 413, 297 S.W. 63, 69. Defendant asked no further action. He was apparently satisfied that any harmful effect had been removed by the trial court's action, taken at his request. He made no request that the jury be instructed to disregard the argument or that the special prosecutor be reprimanded. Nor did he move for a mistrial. "Where the court *78 has sustained the only objection made by a defendant on a given point and the latter permits the trial to go on to a conclusion without further objection or protest, he will not be heard to contend for the first time in his motion for new trial and on appeal that the court should not only have sustained his objection but also should have declared a mistrial." State v. Mosier, Mo. Sup., 102 S.W.2d 620, 628.
The circumstances here do not call for reversal because of this improper argument. Defendant's objection was his sole objection to the special prosecutor's entire argument to the jury. As stated, the objection was promptly sustained and defendant sought no further action. The special prosecutor made no further similar arguments or references, directly or indirectly. He made no persistent attempts, despite the court's ruling, to pursue that line of argument. Contrast State v. Leonard, Mo. Sup., 182 S.W.2d 548; State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524; and compare State v. Tolson, 358 Mo. 419, 215 S.W.2d 438; State v. Reagan, Mo.Sup., 108 S.W. 2d 391.
Defendant cites State v. Hess, 240 Mo. 147, 144 S.W. 489; State v. Webb, 254 Mo. 414, 162 S.W. 622, and State v. Baker, 246 Mo. 357, 152 S.W. 46. However, in the Hess case the defendant's objections were overruled and in the other two cases the state's attorney persisted in his improper argument.
"But," defendant contends, "the argument was so inflammatory and prejudicial that it could not be cured by sustaining an objection to it." As, in sustaining defendant's objection, the trial court took the only action defendant requested, defendant's contention is a complaint that the court should have taken further action on his own motion.
A prosecutor's argument may be so highly improper, so vicious and so prejudicial to the defendant that the trial judge (in the exercise of his judicial function to insure the accused a fair and impartial trial) should act on his own motion during the trial or, in the event of his failure to do so, should grant defendant a new trial for that reason. However, careful consideration of the argument here involved has resulted in our conclusion that it was not one requiring action by the trial court on its own motion. See State v. Arnett, 338 Mo. 907, 92 S.W.2d 897. We need not decide whether, had defendant so requested, the trial court should have taken further action.
In State v. Hess, 240 Mo. 147, 144 S.W. 489, State v. Webb, 254 Mo. 414, 162 S.W. 622, and State v. Baker, 246 Mo. 357, 152 S.W. 46, all cited by defendant, the improper argument was the prosecutor's expression of his own belief in the defendant's guilt. See State v. Myers, 354 Mo. 277, 189 S.W.2d 279. Other obviously highly prejudicial arguments were "the horrors of mob law" in the Hess case, and indirect reference to the defendant's failure to testify in the Baker case. Such is not the situation here.
Defendant next asserts that the special prosecutor made such repeated efforts to get irrelevant and prejudicial testimony before the jury that, despite sustention of defendant's objections, the jury could not return a fair and impartial verdict. There is no merit in this assignment. The special prosecutor did ask the state's witnesses some direct and leading questions; and some of his questioning of both state and defense witnesses was either argumentative, related to immaterial matters or called for inadmissible or cumulative testimony. However, in most instances, defendant's objections were promptly sustained and the special prosecutor either reframed his questions or abandoned the particular line of inquiry. In the other six instances, defendant's objections were properly overruled. Contrast State v. Taylor, 320 Mo. 417, 8 S.W.2d 29. The record reflects no deliberate and repeated efforts, despite the positive rulings of the court, to cause the jury to consider matters inadmissible in evidence or immaterial matters prejudicial to the defendant. Contrast State v. Burns, 286 Mo. 665, 228 S.W. 766, and State v. Taylor, 330 Mo. 1036, 51 S.W.2d 1003.
As to the cross-examination of defendant himself, defendant refers to four instances, in two of which he made no objection below. In the other two, the questions *79 were argumentative as to matters concerning which he had testified upon direct examination; his objection was immediately sustained; and the line of questioning was abandoned by the special prosecutor. Contrast State v. Webb, supra, and State v. Pierson, 331 Mo. 636, 56 S.W.2d 120. "The trial court has considerable discretionary latitude in controlling the cross-examination." State v. Graves, 352 Mo. 1102, 182 S.W.2d 46, 53. And see State v. Swindell, 357 Mo. 1090, 212 S.W.2d 415.
Defendant next says that the evidence relating to "defendant's association with Mrs. Elliott or as to defendant's efforts to improperly obtain Elliott's farm, or as to the question of flight, was so irrelevant, prejudicial and inflammatory that it created a situation that made it impossible for defendant to obtain a fair and impartial trial on the charge of assault to kill or to do great bodily harm." Defendant does not here challenge the propriety of this evidence, to most of which he did not object at the trial. Nor did he, in his new trial motion, complain of its admission. See State v. Leonard, Mo.Sup., 182 S.W.2d 548. In any event, reversal could not be predicated upon the admission of evidencesubstantial, of probative force and otherwise competentprejudicial to defendant. As with argument in a criminal case, evidence "may be `highly prejudicial,' i. e., hurtful, damaging or detrimental, to a defendant and not be improper." State v. Brickey, 348 Mo. 248, 152 S.W.2d 1055, 1061.
But, defendant says, he was prejudiced by the "repeated efforts of the special prosecutor to show flight and then fail to offer substantial testimony of an attempt to escape arrest." We need not summarize the evidence as to flight. Suffice to say, the state's evidence was substantial. Defendant made his own explanation of his movements between the times of the shooting and his arrest. The issue was one for the jury. State v. Craft, 344 Mo. 269, 126 S.W.2d 177. Furthermore, in his new trial motion, defendant did not challenge the sufficiency of the evidence as to any issue. State v. Loston, Mo.Sup., 234 S.W.2d 535.
Finally, we overrule defendant's assignment as to the trial court's failure to instruct upon flight, "although the record teems with insinuations and suggestions of flight." Defendant requested no instruction upon flight. This was a collateral matter, one as to which, absent a request by the defendant, an instruction was not required. See State v. Brown, Mo.Sup., 62 S.W.2d 426. Nor did he assign the alleged error in his motion for new trial. State v. Loston, Mo.Sup., 234 S.W.2d 535.
The nature of most of defendant's assignments has required a meticulous search of the entire record for even a suggestion that defendant's case was prejudiced by the errors of which he here complains. His self-defense theory was well presented by his attorneys. The propriety of the verdict is sustained by persuasive evidence. The punishment assessed is less than the statutory maximum. Defendant had a fair and impartial trial and one in which there was no reversible error. Accordingly, the judgment is affirmed.
VAN OSDOL and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All concur.