THE STATE v. HOWARD BAILEY, Appellant.—126 S. W. (2d) 224.

Division Two, March 15, 1939.

*Roy McKittrick,* Attorney General, and *Wm. Orr Sawyers,* Assistant Attorney General, for respondent.

ELLISON, P. J.—The appellant was convicted of statutory rape upon Pearl Summers, a girl fifteen years old, in the Circuit Court of Dent County on change of venue from Shannon County, and his punishment assessed by the jury at imprisonment in the penitentiary for two years. He has filed no brief in this court. His motion for new trial in the circuit court complains: that the State's evidence was insufficient to make a prima facie case; that the sheriff intruded upon the deliberations of the jury; that the Circuit Court of Dent County acquired no jurisdiction of the case because the proceedings by which the venue was transferred thereto were void; that all the instructions given for the State were erroneous; and that the court failed to give an instruction on appellant's alibi defense.

The appellant resided near Hartshorn, and had served as constable of his township in Shannon County for five or six years. He was a young bachelor and had been going with a number of the girls in that vicinity during the times here involved. He had known the prosecutrix for two or three years and had had social contacts with her five or six times. But he said these were not sought by him, and happened through his meeting her at church or school dinners, or dances, whence he would take her home at her request, her sister

usually accompanying them. From indications in the record the prosecutrix and her family were poor and illiterate. Her father was a farmer, but she was born while the family were living in a lumber camp. Her sister worked in the home of a neighboring family.

The prosecutrix testified she and her sister Ethel first met the appellant at church in 1934 and went to a dance with him. Later, in November, 1934, both girls attended a pie supper at Hartshorn school. On appellant's invitation they permitted him to take them home in his Ford roadster. First he delivered Ethel to the home of "Wint" Deatherage where she lived and worked. Then he and the prosecutrix continued toward the latter's home, a distance of three miles. On the way, at appellant's solicitation she got out of the car and had sexual intercourse with him. This was in Shannon County. On a subsequent occasion the appellant took the prosecutrix home from a dance, his sister accompanying them. There was a mud hole in the lane leading to the prosecutrix's home about a quarter of a mile from the house. The appellant said he couldn't drive his car through it, so he left his sister in the car and walked with the prosecutrix to her home, having intercourse with her on the way. Still later on their way back from a Young People's Meeting at Black Valley Church they committed the sexual act.

The prosecutrix went to a Fourth of July picnic at Bear Claw in 1935, with a man named Fred Helton. That was 15 or 20 miles from her home. According to her testimony she had met the appellant's sister at Hartshorn the day before the picnic and the latter invited her to stay at the home of appellant's family the night of the picnic. That evening she rode to the Bailey home with the appellant, his girl friend, his mother and sister, in appellant's car, and spent the night there. The next morning the appellant offered to drive her as far as Hartshorn. He was living in a house not far from the Bailey home, and stopped there on this trip, inviting her in. This was in Texas County. She refused but he compelled her to do so, holding his pistol in his hand, and there ravished her. As a result of this intercourse in July, 1935, she became pregnant, according to her testimony. On former occasions the appellant had used a contraceptive device. The charge in the information is based on the first intercourse, after the pie supper at the Hartshorn school in November, 1934.

After the ravishment of the prosecutrix on July 5, the appellant took her—not to Hartshorn as she testified he started out to do, but —to her home in the country five miles northeast of Hartshorn. The prosecutrix did not tell her family of her ravishment, but about a month later the mother discovered her condition and some two months after that took her to Hartshorn, informed appellant of her pregnancy, charged him with responsibility therefor, and asked what he was going to do about it. The appellant disclaimed any guilt, so

the mother and daughter went to the prosecuting attorney the same day and had a complaint issued charging appellant with rape in November, 1934.

The corroboration of the prosecutrix's testimony came mostly from members of her family. Her father and mother testified as to her age and the family history. The latter also related about the appellant's bringing the prosecutrix home on July 5, and about confronting him thereafter and charging him with responsibility for her daughter's pregnancy. Ethel Summers, sister of the prosecutrix, told of accompanying her and appellant as far as the home of "Wint" Deatherage after the school entertainment in the fall of 1934 and said the other two continued on in the direction of the prosecutrix's home. (It was on this trip that the rape charged was perpetrated.) The witness fixed the time of the trip as the last of October or first of November, 1934, but stated the school room was decorated with paper representations of turkeys and other things. The appellant admitted he took the prosecutrix home from a dance on one occasion when his sister was along but said that was in March, 1935, the last time he went with her; and denied they encountered a mudhole on the way, and that he walked from there with the prosecutrix to her home.

Speaking generally, the testimony for the defense in addition to that already mentioned, was as follows: The appellant denied ever having had sexual intercourse with the prosecutrix; and denied there was a Thanksgiving entertainment at the Hartshorn school in November, 1934, from which he accompanied the prosecutrix and her sister to their homes. On the contrary, he said the pie supper was in October for Hallowe'en, and that he did not escort the two Bailey girls home on that occasion, but took a Mrs. Tom Smith and her children. Mrs. Smith, a relative of the prosecutrix, lived in Hartshorn and her children took part in a program at the supper. She corroborated appellant on all the foregoing, as did Mrs. Ruthene Jordan, teacher of the school, and Andy P. Johnson, sheriff, with respect to the time and nature of the entertainment. On the other hand Willis Mullens, a director of the school, after consulting the school clerk's record, and also W. L. Stoops and the prosecutrix (being recalled) all said the pie supper was held the week before and in celebration of Thanksgiving.

Mrs. Bailey, mother of the appellant testified that though she had never seen the prosecutrix before, yet the latter at the Bear Claw picnic in July, 1935, practically invited herself to spend the night with the Bailey family, and the next morning hinted, pouted and complained until the mother made the arrangement by which the appellant took her home. The sister of appellant, who was connected with several incidents mentioned in the testimony, did not testify. The appellant said he did not go with the prosecutrix after March,

1935, which was some six months before she had him arrested; that he did go with other girls; and that the prosecutrix went publicly with at least three other young men (which she admitted). He said she seemed to be mad because he was squiring other women, and the theory of the defense was that in retaliation for this she instigated the prosecution. Mrs. Tom Smith, already mentioned, testified that in the Summer of 1936 she asked the prosecutrix why she had had the appellant arrested instead of the guilty party, and the latter replied it was because she liked appellant best. The appellant declared the prosecutrix's story that he drove her to his lodging place not far from the Bailey home and there ravished her on the morning of July 3, 1935, was incredible and physically impossible, because that house was not on the road to Hartshorn, and to have done it he would have had to drive on another road or lane in plain view of his family.

I. We have set out the testimony on both sides of the case at some length. In our opinion the evidence for the State was sufficient to support the verdict, and the questions of fact were properly submitted to the jury.

II. The appellant's motion for new trial alleged that the sheriff intruded upon the deliberations of the jury and took part therein. The court heard evidence pro and con on the charge. The testimony from appellant and one of his attorneys was that the sheriff entered the jury room several times, remained several minutes and came out reporting the jury stood ten to two for conviction, would soon agree, and that the punishment would be two years. One juror said the sheriff told them they ought to try to find a verdict; asked them how they stood; and was informed ten were for conviction and two for acquittal. Another juror thought these things were mentioned but refused to say the sheriff made any statements in that connection.

Two other jurors testified the sheriff said nothing in their hearing calculated to influence their verdict, but one of these admitted on cross-examination that when the sheriff had heard how the jury stood he said "You might soon get together." The sheriff declared he went into the jury room three times, at the call of the jury every time, which was in accord with the instructions of the court. The first time he delivered a bucket of water; the second time he had bought cigarettes for a juror. The third time he asked the jury "Will it be a good while yet, you think?" They answered, "No, not long," and said they stood ten to two. When the sheriff came out of the jury room Judge Barton, the trial judge, was present and asked him if he knew anything, whereupon the sheriff answered, "I heard some of the boys say it was ten and two." He denied telling the jury not to disagree or to hurry.

Section 3683, Revised Statutes 1929 (Mo. Stat. Ann., p. 3236), provides among other things that when the argument is concluded the jury "may retire under the charge of an officer who, in case of a felony, shall be sworn to keep them together in some private or convenient room or place and not permit any person to speak or communicate with them, nor do so himself, unless by order of the court, or to ask them whether they have agreed upon their verdict." It will be noted the statute forbids the sheriff to communicate with the jury *unless* by order of the court *or* to ask them whether they have agreed upon their verdict.

The sheriff testified his ministrations to the jury at their call in getting them a bucket of water and purchasing cigarettes for one juror, were sanctioned by the court's order. On his third visit to the jury room he asked the jury, "Will it be a good while yet, you think?" This was not strictly an inquiry whether they had agreed upon a verdict, such as the statute authorizes, but it was apparently approved by the trial judge, who was present when the sheriff came out of the room and asked him what he had learned. The testimony of the jurors tending to impeach their own verdict was incompetent and should not have been received. [State v. Keller (Mo. Div. 2), 104 S. W. (2d) 247, 249; State v. Gabriel (Mo. Div. 2), 342 Mo. 519, 116 S. W. (2d) 75, 79.] We are not indorsing the sheriff's seeming officiousness, but the trial court heard the testimony and knew part of the facts; and we should defer to its ruling, and therefore disallow this assignment. [State v. Shawley, 334 Mo. 352, 384, 67 S. W. (2d) 75, 90.]

III. The jurisdiction of the trial court is challenged and error is predicated on these facts. The alleged crime was committed and the prosecution begun in Shannon County in the Twentieth Judicial Circuit. The appellant filed an application to disqualify the circuit judge, Hon. Will H. D. Green, on account of bias and prejudice, and also to change the venue from Shannon County because of prejudice of the inhabitants. The application was overruled as to the judge but sustained as to the prejudice of the inhabitants, and the cause sent to Howell County in the same circuit. There the appellant filed a plea to the jurisdiction assigning that the aforesaid judge, Hon. Will H. D. Green, was rendered incompetent to hear and try the cause, under Section 3648, Revised Statutes 1929 (Mo. Stat. Ann., p. 3202), upon the filing in Shannon County of appellant's application to disqualify him, and that he therefore had no jurisdiction to enter the order changing the venue from that county to Howell County, in consequence of which the circuit court of the latter county acquired no jurisdiction. This plea was overruled and after various proceedings before Judge Green, including one trial of the case wherein the jury failed to agree, the court reconsidered its action in overruling appellant's plea to the jurisdiction, sustained

the plea and ordered the cause certified back to the Circuit Court of Shannon County.

In the latter court Judge Green entered an order reciting the foregoing history, set aside his order granting the change of venue to Howell County, sustained the application to disqualify himself, and called in Hon. W. E. Barton, Judge of the Nineteenth Judicial Circuit as special judge. Judge Barton sustained the application for a change of venue and sent the cause to Dent County in his own circuit. Thereafter, appellant filed a plea challenging the jurisdiction of the Dent County Circuit Court on two grounds: (1) that Judge Green originally changed the venue of the cause from Shannon to Howell County, and was without jurisdiction to change it back to the former county; (2) that the charge was filed in Shannon County in the Twentieth Judicial Circuit and on appellant's application for a change of venue from that county because of prejudice of the inhabitants Judge Barton was not authorized to send the cause outside of that circuit to Dent County in the Nineteenth Circuit.

There is no merit in appellant's first contention. When an application is filed to disqualify a circuit judge for prejudice he has power only to determine whether the application is in due form and due time, and if it is, to see that the proper steps are taken to substitute another judge. [State v. Creighton, 330 Mo. 1176, 1195, 52 S. W. (2d) 556, 562; Ex parte Thompson v. Sanders, 334 Mo. 1100, 1105, 70 S. W. (2d) 1051, 1054.] There is no complaint here as to the form or timely filing of the application. Therefore, Judge Green's action in ordering the cause transferred from Shannon County because of the prejudice of the inhabitants was invalid. When the fact was called to his attention in Howell County he (on reconsideration) purged his docket of the case and sent it back to Shannon County. This was at appellant's invitation, as expressed in his first plea to the jurisdiction. On his return to Shannon County Judge Green set aside the erroneous order, disqualified himself, and called in Judge Barton. We think he had power to do this and find no link missing in the chain of Judge Barton's judicial title to the cause. Authorities sustaining this view are: State v. Perkins, 339 Mo. 27, 31, 95 S. W. (2d) 75, 76; State v. Gabriel, 88 Mo. 631, 635; State ex rel. Schonhoff v. O'Bryan, 102 Mo. 254, 259, 14 S. W. 933, 935; State v. Steen, 115 Mo. 474, 479, 22 S. W. 461, 463; State ex rel. Snow Steam Pump Works v. Homer, 249 Mo. 58, 73, 155 S. W. 405, 409.

Neither can appellant's second assignment be sustained. It is true that when, as here, a change of venue is sought because of the prejudice of the inhabitants of a single county in a circuit, the cause should be sent to another county in the *same* circuit, Section 3626, Revised Statutes 1929 (Mo. Stat. Ann., p. 3192). It is only when

329

the application alleges prejudice of the inhabitants of the entire circuit, Section 3628, Revised Statutes 1929 (Mo. Stat. Ann., p. 3193); or (perhaps) in more than one county in the circuit, Section 3630, Revised Statutes 1929 (Mo. Stat. Ann., p. 3194), that the cause may be sent out of the circuit. Judge Barton acquired jurisdiction of the cause not in his own right as judge of the Nineteenth Circuit, but as special judge called into the Twentieth Circuit; and he had no right to transfer the cause from the Twentieth Circuit to his own circuit.

Furthermore, the transfer is not validated by Section 3651, Revised Statutes 1929 (Mo. Stat. Ann., p. 3206), invoked by the learned Assistant Attorney General. That section is a long one providing, among other things that the substitute judge shall possess all the powers and perform all the duties of the regular judge in the cause, may adjourn or continue the case, "and may grant a change of venue in said case to the circuit court of another county in the same circuit, *or to another circuit or criminal court.*" (Italics ours.) But that is evidently a general provision authorizing the substitute judge to grant a change of venue in the circumstances postulated by the sections dealing with that subject. Certainly it is not the intention of Section 3651 to confer on a substitute judge powers greater than the regular judge would possess, and to authorize him to grant a change of venue to a county or circuit where the regular judge could not send the cause.

Nevertheless, in spite of the error, appellant is in no position to take advantage of it. There is nothing in the record showing that when Judge Barton granted the change of venue from Shannon County and sent the cause to Dent County, the appellant saved his exceptions and preserved them in a bill of exceptions in the Shannon County Circuit Court. What he did do was to attempt to raise the question after the cause had been transferred to Dent County by filing a plea to the jurisdiction in the circuit court of that county. This was futile. The point must be raised and served in the court where the change of venue was ordered. [State ex rel. Wolfner v. Harris (Mo. banc), 321 Mo. 209, 278 S. W. 668.]

█ The last assignment is the eighth in appellant's motion for new trial and charges that the court erred in failing to give an instruction upon his defense of alibi. We doubt if he was entitled to an alibi instruction. He simply denied ever having had sexual intercourse with the prosecutrix. If there was any alibi in the case it must have been this: the prosecution charged a rape of the prosecutrix by the appellant in November, 1934, while they were going home from the pie supper at Hartshorn school. The appellant contended there was no such supper in November, 1934; that the entertainment that fall was in October in observance of Hallowe'en; and that he took Mrs. Tom Smith and her children home that night. But granting the appellant was entitled to an alibi instruction he

330

asked and was given an instruction, D-5, on that issue. In his motion for new trial he makes no valid complaint of the form of that instruction. So the assignment is wholly without foundation. The other assignments of error in the motion for new trial need not be noticed.

Finding no reversible error the judgment and sentence are affirmed. All concur.