STATE v. AMIEL SWINDELL, Appellant.—No. 40649.—212 S. W. (2d) 415.

Division One, June 14, 1948.

J. *Grant Frye* and *Gerald B. Rowan* for appellant.

*J. E. Taylor*, Attorney General, and *John R. Baty*, Assistant Attorney General, for respondent.

[416] DALTON, C.—Defendant was convicted of felonious assault without malice aforethought committed upon one W. E. Strobel by stabbing him with a knife in violation of Sec. 4409 R. S. 1939. The punishment was assessed by a jury at a fine of $200.

The assault was committed in Stoddard county. After a trial of the cause in that county, at which trial the jury was unable to agree upon a verdict, the cause went on change of venue to Butler county, where the cause was retried and this appeal taken.

Error is assigned on the court's refusal to direct a verdict in favor of appellant, on the giving and refusal of instructions and on certain rulings made by the court during the cross-examination of the

prosecuting witness and the cross-examination of the appellant and during the argument of counsel for appellant and for the state.

Appellant, referred to as "Bunk," resided at Delta, in Cape Girardeau county, where he and one Eaton operated a sawmill. Strobel resided on a farm six and one-half miles north of Bloomfield, in Stoddard county and some 25 miles from Delta. Prior to the difficulty here, Strobel had gotten two loads of wood from appellant's sawmill at Delta. On the afternoon of November 23, 1946, appellant, with Eaton and appellant's wife and two small children, went in Eaton's automobile to Strobel's home. They arrived just after dark and drove up a private road to within about 125 feet of the house and stopped 25 feet from the yard gate. Eaton was in the driver's seat, appellant was beside him and appellant's wife and children were in the back seat. They remained in the automobile, left the lights on, and, when Strobel's grandson appeared, they asked for Strobel. When Strobel came out, he approached the automobile from the front and left. He had known appellant all his life, but he did not then know appellant was in the automobile. Appellant got out of the automobile on the right hand side and met Strobel near the left front of the automobile, where an argument and a fight ensued. Appellant contends that "the state's evidence showed, as a matter of law, that defendant acted in self-defense."

Strobel testified that, as he approached the automobile, the appellant came around the front of it to meet him, stopped right in front of him, facing him, in reach of him, and raised his leg and shook his leg and his hand. Strobel said he could see that appellant "had a knife or something by his actions," and Strobel said: "Bunk, you have come for trouble, you have got your knife." At that time appellant's wife, seated in the back seat of the automobile, raised two fingers and said something about telling Strobel "not to get that wood" unless he saw appellant. She had told Strobel "on the 18th to not bother that wood" unless he saw appellant. Strobel could see her through the window of the automobile and he replied: "I know and I didn't get no wood that day, but Bunk owes me for log hauling." Appellant then said to Strobel, "You owe me and Tom" (appellant's brother). Strobel further testified: "Bunk says, you owe me and Tom, and I said, what for, and he said for work, and I said, you are a lying s— of a b——." When those words were spoken, appellant said nothing, but cut Strobel with a knife. Strobel testified: "Nothing more than I said you are a lyin s— of a b—— and he cut me. . . . . He came around the car on me. . . . When he stabbed me, first he cut me here, as he run into me, and he put his head sideways against me here. . . . He cut me right in there with something another. I didn't see what it was. . . . Well evidently he must have cut me with his right hand. . . . He had me clinched up and . . . he tried to hold to me. The side

of his head was against my breast and he was coming like that and I could tell or feel something cutting me every time he hit me." Appellant's other hand was around Strobel's back. Strobel's grandson said that appellant "just kinda rushed and clinched" and that Strobel was trying to shove him off and push him away. Strobel also said that he was trying to push appellant off and that he did not [417] strike appellant at any time. Strobel had put on a jumper when he left the house, but, when he saw appellant had a knife, he took off the jumper and threw it aside. He said he was afraid to run. He threw the jumper aside, before he called appellant a lying s— of a b——. Strobel had only "a little knife . . . for general purposes like any farmer on a farm," but didn't have it out or use it. According to Strobel, nothing was said after appellant started cutting on him, until Strobel "told him half a dozen times, . . . Bunk you have killed me," and until after appellant saw that he had injured his own hand. Strobel and appellant were then taken to a doctor at Bloomfield, in Eaton's automobile, along with the other passengers. Other facts affecting the weight and value of this testimony need not be stated.

Appellant's theory is that "the prosecuting witness's own testimony showed facts justifying a reasonable person to do what defendant did as being reasonable self-defense." Appellant refers to the circumstances of darkness, the throwing of the jumper and the language used and says that "the undisputed evidence . . . showed acts and conduct . . . constituting a lawful and reasonable apprehension on the part of defendant authorizing him to use the means he did to repel what he had a reasonable right to believe . . . was an intent to injure him greatly . . . " In the brief, appellant refers to certain cases, wherein it is stated that "the right of attack, in some circumstances, may be essential to the right of self-defense," and he insists that he "acted as an ordinary reasonable person would have acted under such circumstances"; that the facts and circumstances testified to by Strobel "could have had no other effect on a reasonable man than the effect it had on" appellant; and that the court should have directed a verdict in his favor, as requested.

In ruling appllant's requested instruction in the nature of a demurrer to the evidence, the facts favorable to the state's case must be taken as true, together with such favorable inferences as may be reasonably drawn from the facts proved, and countervailing evidence must be rejected. State v. Ring, 346 Mo. 290, 141 S. W. (2d) 57; State v. Schrum, 347 Mo. 1060, 152 S. W. (2d) 17. Considering the above evidence in a light most favorable to the state, it is clear that the state produce substantial testimony relating to appellant's guilt of the offense charged entirely sufficient to make out a case for the jury. State v Davis, 342 Mo. 594, 116 S. W. (2d) 110. On the state's evidence appellant was the aggressor, Strobel was getting ready to

defend himself or trying to defend himself and appellant cut him when the words mentioned were spoken. Whether appellant believed danger was imminent and whether there was, at the time, reasonable cause for that belief were issues for the jury. The court did not err in refusing to direct a verdict for appellant on the ground that the state's evidence showed as a matter of law that appellant acted in self-defense. State v. Turner, 246 Mo. 598, 616, 152 S. W. 313; State v. Frazier, 339 Mo. 966, 98 S. W. (2d) 707, 712; State v. Singleton, (Mo. Sup.), 77 S. W. (2d) 80, 83.

In view of the other assignments of error, we make a brief statement of appellant's evidence. One Robinson, in charge of wood sales at appellant's sawmill, testified that he sold Strobel "some wood just a day or two before this cutting"; and that Strobel had gotten two loads of wood and paid for the first, but not for the second load. Strobel told Robinson he had settled with Eaton. Eaton testified that he was not paid, but that he asked Strobel who had told him (Strobel) to get the wood and Strobel told him he had bought it from appellant. Eaton said they went down to Strobel's to collect for the wood and to see why Strobel told Robinson he had paid him (Eaton), when he had not. Eaton did not know the amount due, but guessed it to be "around twelve dollars."

Appellant admitted that he cut Strobel in the fight and that he turned the knife over to the sheriff at Bloomfield. Appellant said that Strobel had gotten some wood and had not paid for it; and that he talked to Robinson and Eaton, and he and Eaton went to collect for the wood. Appellant "never did know for sure" what Strobel owed, because he didn't see the [418] load, but it was for one load of wood. Appellant testified that Strobel came down to the automobile alone; that he (appellant) passed around in front of the automobile to talk to him; and that when he (appellant) was in the lights of the automobile and Strobel was eight or ten feet away, Strobel started taking off his coat. Appellant further testified: "He said 'I know what you s— of b——s are here for and . . . if I can't do it with a knife, I can with a shotgun.' I said we never came down here for any trouble. . . . He said I know what you are down here for. . . . He walked right up pretty close to me. . . . I would say I was two feet from the left front fender of the car about half way between the front of the car and the door on the left side at that time. . . . He said you owe me for log hauling and I said you owe me and Tom for some work . . . He said you are a lying s— of a b——. By that time my wife said, 'Come on Bunk let's go we don't want to have any trouble,' and I started around to leave and when I turned he hit me back up here in the back of the head and knocked me over against the car. . . . It felt like he had one hand on my neck and was trying to hit me with the other one and I knew I was going to get hurt or hurt somebody. . . . I knew I was going to

get hurt bad if I didn't do something. . . . Well when he hit me of course he knocked me back over the car fender. . . . I got my knife and started cutting him. . . . He was trying to hit me and he had my head pushed over some way and I was too scared to know exactly." Appellant was trying to get up, trying to get loose. Appellant did not put his hand in his pocket and kick his leg, as testified to by Strobel. He cut Strobel to keep from getting hurt. He said: "I was afraid he would kill me." In the scuffle appellant got his knife out and opened it, after Strobel hit him. Appellant said: "We was together and he had me cramped over the car fender." Appellant saw no shotgun or knife, and Strobel had no weapon that appellant saw. Appellant "wasn't mad," but was scared.

■ Appellant complains of instruction 8, which is as follows: "The court instructs the jury that language or epithets, however offensive, will not justify or excuse an assault." Appellant concedes that this instruction was taken from State v. Brown, (Mo. Sup.), 165 S. W. (2d) 420, and that, as an abstract proposition, it is probably correct and in many cases is a proper instruction. Appellant, however, insists that under the facts in this case instruction 8 *excluded* from the consideration of the jury on the issue of self-defense the words spoken by Strobel; and that, in *excluding* the words spoken, the court took one of the essential elements of self-defense out of the case. Appellant says, "It is readily seen that to tell the jury, that those words were not sufficient to justify an assault, is *to take out* the most patent element of the facts going to make justification." (Italics ours.) Appellant's real complaint is that the law as declared by instruction 8 is erroneous and prejudicial under the facts of this case, since he insists that the statement, that words will not justify an assault, "is not true" in this case. In his motion for a new trial, appellant contends that the instruction is erroneous because, under the facts and circumstances shown, "the language of the prosecuting witness . . . . . would have justified the assault by defendant." No case cited by appellant supports his contention. Appellant's argument recognizes that the words spoken were the essential basis of the assault and that the law stated was particularly applicable to the facts.

The state's principal instruction 6, submitting the issue of defendant's guilt submitted a finding "and not in the lawful defense of his person as explained in another instruction." Instruction 8 must be read and considered along with instruction 6 and all other instructions including instruction A, fully covering the issue of self-defense. Instruction A further told the jury that if appellant "had reasonable cause to believe and did believe, that it was necessary for him to do such cutting to protect himself against such apprehended danger, you will acquit the defendant on the ground of self-defense." All instructions must be read and considered together. State v. Talbert, 354 Mo. 410, 189 S. W. (2d) 555, 556; State v. Johnson, 349 [419]

Mo. 910, 163 S. W. (2d) 780, 785. The instructions repeatedly directed the jury's attention to the evidence, "if you find and believe from the evidence," or "under all of the evidence," or "if after a full and fair review of all the evidence in the case." Instructions consisting of mere abstract statements of law, not applicable to the facts in evidence and having no place in the case, have been held to be prejudicial, and appellant insists that instruction 8 had "no place in this particular case." We think the instruction stated a correct and applicable rule of law, which was not difficult of application to the facts in evidence. The instruction did not *exclude* any evidence from the consideration of the jury on the issue of self-defense and, when read and considered with the other instructions, it was not misleading or prejudicial. The court did not err in giving the instruction. State v. Robinett, 312 Mo. 635, 640, 281 S. W. 29; State v. Brown, supra; State v. Little, (Mo. Sup.), 228 S. W. 793; State v. Kaiser, 78 Mo. App. 575, 577.

[3] Appellant contends that the court erred in not giving his instructions B, or C, or an instruction of like tenor, because these instructions submitted appellant's theory of his legal right to cut the prosecuting witness under the facts set out in the instructions. Appellant says that, if the instructions were not correct, they were at least requests or motions for the court to give "an instruction of its own motion" similar to the instructions requested. The matter is not further particularized in the motion for a new trial. Instruction C was only an amended form of instruction B. Both of these instructions dealt with the issue of self-defense, which was fully covered by instruction A. Instructions B and C began as follows: "The court instructs the jury: If you find that on the occasion of the trouble in question Elmer Strobel had gotten wood at the Swindell and Eaton mill and had not paid for such but had told Robinson he had paid Eaton and had told Eaton that Swindell owed him and that these statements were false then defendant Swindell had a right to go to Elmer Strobel and ask him to pay for the wood; . . . . " This proposed submission did not conform to the facts in evidence. It sought to inject, emphasize and comment upon a false issue, which might be confusing and misleading to the jury. No question of appellant's right to go to the Strobel residence was involved. The instructions were properly refused. In view of instruction A, which was given, no further self-defense instruction was required. State v. Sapp, 356 Mo. 705, 203 S. W. (2d) 425, 432(21).

The appellant contends that the court erred in unduly limiting the cross-examination of the prosecuting witness on the matter of "the wood transaction," the failure to pay and the detailed circumstances and statements attending such failure to pay, and also on the matter of why Strobel didn't have the appellant arrested. Appellant sought to show the facts about "the wood transaction"

by the cross-examination of Strobel for the alleged purpose of showing that he (appellant) was on "legitimate peaceable business" to collect for the wood. Other grounds now mentioned, such as being "explanatory of the state of mind of the prosecuting witness at the time of this cutting," were not called to the court's attention. See State v. Gabriel, 301 Mo. 365, 256 S. W. 765, 767; State v. Rose, 339 Mo. 317, 96 S. W. (2d) 498, 506. The trial court ruled that the detailed facts and circumstances and statements attending the wood transaction were "immaterial and too remote at the time. . . . It may develop later on that that would be material to this witness." The matter was not further called to the court's attention and the circumstances were later shown by appellant and his witnesses, as hereinbefore stated. After a careful review of the record we find no merit in either of the assignments with reference to unduly limiting the cross-examination of the prosecuting witness. The "legitimate peaceable business" of appellant was not a matter to be proven by cross-examination of Strobel

■ Appellant assigns error on the court's action in requiring him "to answer on cross-examination about not having the doctor treat his head and then in allowing the state to call the doctor in rebuttal and show there was nothing wrong with defendant's [420] head." Appellant says the cross-examination was beyond the scope of his examination in chief and the rebuttal evidence accentuated the damage. Appellant testified that he got hurt in the fight and that his wounds consisted of a cut across the hand and bumps on his head. He exhibited the scar on his hand to the jury and said Dr. Harris treated it. On cross-examination, over objection, he was asked if the doctor treated the bumps on his head and he said "no." In rebuttal Dr. Harris testified that he treated appellant "primarily for injury to his hand," but made a "routine examination" of appellant's head and found nothing wrong with it. The cross-examination was within the scope of the direct examination as tending to show the extent or severity of the head injury about which appellant had testified. State v. Ayres, 314 Mo. 574, 285 S. W. 997, 998; State v. Shilkett, 356 Mo. 1081, 204 S. W. (2d) 920, 924. Dr. Harris' testimony was in rebuttal of appellant's testimony that he had been *struck* on the head and injured. Its admission in rebuttal was within the court's discretion. State v. Lewis, (Mo. Sup.), 137 S. W. (2d) 465.

■ Appellant further contends that the court erred in unduly restricting the argument of his counsel concerning the conduct of Strobel "in the transaction about the wood" and in making certain comments and rulings during the argument of his counsel and further in not restricting and reprimanding counsel for the state for inflammatory argument. No clear picture of what actually took place during the argument of the cause appears from the record. For the

most part, only alleged statements of counsel as to what had been said and the objections and rulings are set out. Objections were sustained to appellant's use of the terms "stealing" and "stolen" in connection with the wood transaction and to the use of the words, "I trapped him," in connection with the knife incident. The court said there was no evidence that the prosecuting witness "stole any wood," and counsel was advised to confine himself to the testimony in the case. During the argument appellant's counsel apparently argued that if appellant had killed Strobel "it might have been riddance· of some bad rubbish" and counsel for the state subsequently argued that, if appellant's counsel couldn't jump on the ·sheriff, he jumped on the prosecuting attorney and if he couldn't do that he jumped on the prosecuting witness. A controversy developed and, ultimately, objections were overruled and one reason assigned by the trial court was "in view of the argument of counsel for the defense." As stated, the arguments are not fully set out in the record but, from what appears, no abuse of the trial ·court's discretion in connection. with such matters is shown by the record. State v. Reagan, (Mo. Sup.), 108 S. W.· (2d) 391, 397; State v. Shilkett, supra.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.