**STATE of Missouri, Respondent,**

v.

**Grant FINNELL, Appellant.**

No. 44447.

Supreme Court of Missouri.

Division No. 1.

June 13, 1955.

Errol Joyce, Brookfield, for appellant.

John M. Dalton, Atty. Gen., Fred L. Howard, Asst. Atty. Gen., for respondent.

## HOLLINGSWORTH, Judge.

On the 19th day of August, 1953, in Chariton County, Missouri, defendant fired three shots from a shotgun into the body of Francis Johnson, seriously but not fatally wounding him. Upon trial by jury in the circuit court, defendant was found guilty of felonious assault without malice aforethought and his punishment was fixed at imprisonment in the State Penitentiary for a term of two years. He has appealed from the judgment and sentence imposed in conformity with the verdict, but has not filed a brief. Consequently, we examine the essential portions of the record and the valid assignments of error set forth in the motion for new trial.

Defendant and Johnson were neighboring farmers. They had been friends since Johnson moved into the community in August of 1952, exchanging work and extending each other the courtesies and mutual assistance customary with friendly neighbors in farm communities. Defendant owned a herd of beef cattle, including a herd bull. Johnson owned a herd of dairy cattle, including a herd bull. The bull owned by Johnson was vicious. On the day prior to the shooting, these bulls, in some manner not made clear by the evidence, had come into contact and had fought each other in a pasture on the Loren Enyeart farm, which was near the farms of defendant and Johnson.

The evidence on behalf of the State was that at about eight o'clock on the morning of the shooting, Johnson, while at breakfast in the kitchen of his home, saw defendant approaching. Johnson finished his breakfast and, followed by his children, went out of the house, across a porch and through a gate to meet defendant. When they were 14 or 15 feet apart, defendant asked Johnson if he knew where his (defendant's) bull was. Johnson replied that he had not seen the bull since the previous afternoon, but that he was quite sure defendant could find it at the Stephenson farm (in the same vicinity). Defendant then inquired of Johnson if he was "going to get rid of [his] bull or put blinds on him". Johnson replied that he needed the services of his bull and that defendant "didn't even have a ring in the nose of his bull"; that he "couldn't afford to keep on putting fences up any more" except to take care of his own livestock; that he was "disgusted", "sick at heart" because of defendant's "making excuses he could not take care of his fences and livestock due to his abdominal hernia * * *." Defendant then came toward Johnson. Believing that defendant was charging him, Johnson sidestepped. Defendant passed Johnson, stooped as though picking up something and then started walking away. When he was 15 or 20 feet from Johnson and walking away from him, Johnson for the first time saw the shotgun. Its barrel was extending above defendant's left shoulder. Suddenly, defendant stopped, wheeled, raised the shotgun to his shoulder, mumbled something and fired a shot from the gun. Johnson's right hand, which he had raised when defendant pointed the gun at him, was practically severed from his forearm by the shot. Defendant pumped another shell into the barrel of the gun and fired another shot, which struck Johnson just below the right kneecap, knocking him to the ground. After Johnson had fallen, defendant fired a third shot into Johnson's groin and ran away. Johnson was not armed. He owned an Iver Johnson 22-caliber revolver, which was then

hanging from a hook on the porch. It was found there by Cleve Iman, the sheriff, following the shooting. There was a mud dauber's nest in the barrel.

Defendant's version of the shooting was: On the day prior to the shooting, his bull was "cut up and damaged" in the fight with Johnson's bull. On the next morning, he was desirous of "checking" the cattle and, knowing of the vicious nature of the Johnson bull, took his 12-gauge shotgun with him for protection. He first went to Mr. Enyeart's farm, where he borrowed four shells for his gun. He then began a search for his bull, searching his own farm and a part of Mr. Stephenson's farm, and finally went to Johnson's place to see if he had seen his (defendant's) cattle. He and Johnson were then good friends and he was not angry at Johnson. His gun was not out of his hands at any time while he was at Johnson's farm. He asked Johnson about the cattle. Johnson said, "I am getting damn tired of doing your damn fencing * * *." Johnson continued to quarrel about the matter for four or five minutes. To avoid trouble, defendant started to leave. He heard a noise and a mumble back of him and turned. Johnson said, "I am going to kill you. I am going to make bull meat out of you." Defendant, in an effort to save his own life and believing it necessary to so act, fired three shots at Johnson in rapid succession. He never saw any gun in the possession of Johnson, but did see Johnson's right hand go into his overalls front pocket and thought he had a gun and was reaching for it. Following the shooting, defendant went to a neighbor's home and there left his gun. He and the neighbor drove to the sheriff's office, where defendant told the sheriff he had shot Johnson.

The trial court submitted the case in behalf of the State upon the theory of assault with intent to kill with malice aforethought and assault with intent to kill without malice aforethought, and in behalf of defendant upon the theory of lawful self-defense.

The information follows the language of the statute, section 559.180 RSMo 1949, V.A.M.S., and is sufficient in form and substance. State v. Groves, Mo.Sup., 159 S.W. 2d 773, 774. The verdict is in proper form, is responsive to the issues, and the punishment therein fixed is within the limits prescribed by law. Section 559.190 RSMo 1949, V.A.M.S. State v. Meinhardt, Mo. Sup., 82 S.W.2d 890, 893. Defendant was granted allocution and the judgment is responsive to the issues and the verdict.

■ Error is assigned in the refusal of the trial court to sustain a motion for directed verdict offered at the close of all of the evidence, but does not advise us wherein or why such motion should have been sustained. Suffice to say that the evidence clearly justified submission of the case upon assault with intent to kill on purpose and with malice aforethought as defined in said § 559.180 and, more importantly, the lesser offense of assault with intent to kill without malice aforethought as defined in said § 559.190. State v. Swindell, 357 Mo. 1090, 212 S.W.2d 415, 417.

■ The motion for new trial avers that the trial court refused to permit defendant to show: (1) that a friendly relationship existed between him and Johnson; (2) that defendant had performed and offered to perform various services and favors for Johnson evidencing his friendship, and (3) the vicious nature of Johnson's bull, Johnson's experience with the bull and the necessity of carrying arms to protect one's self against the bull. A careful reading of the record reveals that the friendly relationship existing between defendant and Johnson prior to the shooting and numerous specific instances of favors rendered Johnson by defendant were admitted in evidence by the court without objection and were not disputed; and that the vicious nature of Johnson's bull was also fully developed and was not seriously in dispute. The assignments are without merit and are overruled.

■ Error is assigned in the admission into evidence of two pictures of the rear of Johnson's premises, whereat the shooting occurred, for the reason that they were taken long after the shooting and did not

reflect the condition of the premises at that time. The motion avers that such action of the trial court was prejudicial, but fails to state wherein or why it was prejudicial. No issue of fact turned upon these pictures, nor upon the condition of the premises at the time of the shooting as distinguished from their condition as of the date the pictures were taken. Furthermore, the testimony of Johnson showed that the condition of the premises, as reflected in the pictures, was the same as when the shooting occurred, "except for the woodpile". The trial court did not err in admitting them. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 106–107 [25a, 26–28b, 29c].

■ Error is assigned to the giving of an instruction on circumstantial evidence. Assuming that the facts in evidence did not call for such an instruction, yet, inasmuch as it is merely cautionary and favorable to defendant, it could not have been prejudicial to him. The assignment is overruled.

■■ Error is assigned in the giving of Instruction No. 3, in that it declared: "The term malice, as used in these instructions, does not mean spite or ill will, but the intentional doing of a wrongful act without just cause or excuse. 'Aforethought' means thought of beforehand, for any length of time, however short." The definitions set forth in said instruction closely follow similar definitions expressly approved in the case of State v. Tetrick, 199 Mo. 100, 103, 97 S.W. 564, 565, and those definitions, in substance have become classic through many years of usage. State v. Hagerman, Mo. Sup., 244 S.W.2d 49, 52. The assignment is overruled.

Error is assigned to the giving of Instruction No. 7, which reads as follows:

"The court instructs the jury that words or epithets, no matter how vile or insulting, or threats alone, do not justify an assault, and, therefore, the right of self-defense does not imply the right of attack, that is to say, one may not attack as a means of defending himself, unless first attacked by his adversary, or where, from the acts and conduct of his adversary he has reasonable cause to believe, that his adversary is about to kill him or do him some great bodily harm.

"Therefore, the court instructs you that if you believe from the evidence that the defendant shot and injured the said Francis Johnson unnecessarily, and when he did not have reasonable cause to believe that the said Francis Johnson intended to kill him or do him some great bodily harm, then there is no self-defense in the case and you cannot acquit him on that ground."

■ The same criticism here made of the foregoing instruction was also made of a like instruction in the case of State v. O'Leary, Mo.Sup., 44 S.W.2d 50, wherein the instructions on the right of self-defense were quite similar to those given in this case. We there said, loc. cit. 54: "The statement in an instruction that the right of self-defense does not imply the right of attack, or equivalent expression, standing alone, has been condemned because one may in certain circumstances act upon appearances and need not wait, sometimes could not safely wait, until actually attacked before acting in self-defense. [Cases cited.] But in the instant case that statement is not all that the court said on that subject. The statement is explained in the same instruction and in the same sentence so as to show that the words 'the right of self-defense does not imply the right of attack' do not apply where one has reasonable cause to believe that he is about to be attacked. Reading the instruction as a whole and in connection with the other instructions on self-defense, we think this objection not well taken.

"For like reasons we deny defendant's contention that this instruction is prejudicially erroneous in telling the jury that, if defendant shot and killed Silvey unnecessarily, etc., there is no self-defense. Had there been no qualification of the word 'unnecessarily,' and nothing further to limit its effect, the instruction would be bad, be-

cause, as stated above, one may act upon appearances, and the event may prove that there was no necessity in fact, though at the time it reasonably appeared there was. * * * But again defendant fails to quote all the court said on the point. The instruction says that, if defendant shot and killed Silvey unnecessarily, and when he did not have reasonable cause to believe, etc. The instruction only denies defendant the right of self-defense if he shot unnecessarily and also without reasonable cause to believe it was necessary. The instruction is not erroneous in this particular." We have since followed the O'Leary case. See State v. Carter, 345 Mo. 74, 131 S.W.2d 546, 548, and State v. Daugherty, Mo.Sup., 196 S.W.2d 627, 628. The assignment is overruled.

Finally, the motion for new trial alleges that defendant was deprived of his constitutional right of trial by a fair and impartial jury by reason of the bias and prejudice of juror Logan Prather, which was unknown to defendant or his counsel until after verdict. An exhibit attached to the motion recites that on voir dire examination by the prosecuting attorney Mr. Prather stated he did not know whether he had heard the case discussed by anyone purporting to know the facts; that he had not heard it discussed by "some of the neighbors"; and further:

"Q. Have you formed an opinion concerning the guilt or innocence of the defendant? A. Not necessarily.

"Q. Have you formed an opinion concerning the facts from the discussion you have heard in this case? A. From what I have heard.

"Q. You have formed an opinion how it happened? A. Yes, sir.

"Q. Do you think it would require evidence to remove that opinion? A. No, sir.

"Q. Do you think you could render a fair and impartial verdict? A. I think I can."

Apparently, Prather was thereupon accepted without further interrogation and without challenge.

Attached to the motion, in support of defendant's foregoing contention, are affidavits of Prather and one Dewey Hughes. Prather's affidavit states: "I was selected as a juror in case, State of Missouri, Plaintiff, versus Grant Finnell, Defendant. When I was questioned by Mr. Wheeler as to my qualifications to sit as a juror in the cause, I told the Court that I had already made up my mind in the case. The statement was true. I further told Mr. Wheeler that I had formed an opinion and that it would take evidence to change that opinion. I don't know why I was accepted as a juror." Hughes' affidavit recites that on the day after the trial Mr. Prather said to him concerning the instant case: "I couldn't understand why I was kept on the jury. I made the statement in court that I had already made up my mind in the case. That I had formed an opinion, and I never changed it."

▮▮▮ Upon the basis of Prather's answers to the questions propounded to him upon voir dire examination he was qualified to sit as a juror in the case. Section 546.150 RSMo 1949, V.A.M.S.; State v. Garrett, 285 Mo. 279, 226 S.W. 4, 7; State v. Stanton, Mo.Sup., 68 S.W.2d 811, 813. The law is clear and well settled that neither affidavit constituted competent evidence to impeach the verdict. In the case of State v. Ferguson, 353 Mo. 46, 182 S.W.2d 38, 45 [14, 15], we said: "As was pointed out in the Reich case [Reich v. Thompson, 346 Mo. 577, 142 S.W.2d 486, 492, 129 A. L.R. 795] a 'juror will not be heard to impeach' his and the jury's verdict, either as to conduct inside or outside the jury room, either before or after their discharge. State v. Bailey, 344 Mo. 322, 126 S.W.2d 224; State v. Keller, Mo.Sup., 104 S.W.2d 247. It necessarily follows that 'affidavits or testimony of third persons as to statements of jurors tending to impeach their verdict are inadmissible, not only as hearsay but also for the same reason which excludes the affidavits or testimony of the

jurors themselves.' 23 C.J.S., Criminal Law, § 1495; State v. Rush, 95 Mo. 199, 8 S.W. 221. This is so even though the jurors' affidavits may be used in support of the verdict. State v. Westmoreland, Mo. Sup., 126 S.W.2d 202." See also Vol. 9a Mo.Dig., Criminal Law, ☜957, (1) and (2), pages 181–182. There is no evidence in the record to sustain defendant's assertion and the assignment must be overruled.

Finding no reversible error in the record, the judgment is affirmed.

All concur.