STATE of Missouri, Respondent,

v.

Edward CHEVLIN, Appellant.

No. 44686.

Supreme Court of Missouri.

Division No. 2.

Dec. 12, 1955.

Thomas M. Howell, Galen Knowlton, Donald E. Raymond, Kansas City, for appellant, Howell, Knowlton & Ellis, and Pew, Taylor, Welch & Sheridan, Kansas City, of counsel.

John M. Dalton, Atty. Gen., David Donnelly, Sp. Asst. Atty. Gen., for respondent.

STOCKARD, Commissioner.

Appellant was convicted in the circuit court of Jackson County of the crime of assault with intent to kill or do great bodily harm pursuant to Section 559.190, RSMo1949, V.A.M.S. The jury assessed his punishment at a fine of $300 and confinement in the county jail for six months, and he appeals.

 Appellant first contends that the verdict is not supported by the evidence. It is not the province of this court to pass upon the weight of conflicting evidence, but only to determine whether there was substantial evidence, if believed by the jury, to sustain a verdict of guilty. In determining its sufficiency, we take as true all the substantial evidence offered by the State together with every legitimate inference which may reasonably be drawn therefrom. State v. Whitaker, Mo.Sup., 275 S.W.2d 316 [10]; State v. Allen, 342 Mo. 1043 [2], 119 S.W.2d 304 [3].

The evidence is voluminous and conflicting, but the jury could have found the following facts. Local 838 of the teamsters union had been placed in "trusteeship" by the international union. Appellant was vice president and business agent of Local 838 and was dissatisfied with the management of the union. On the evening of January 9, 1952, he presided at a meeting of the union membership and made a speech in which he denounced in strong language certain officials of the union. Asa McMullin, Ruby Stufflebeam and Mrs. Lorine Shoemaker were members of the "board of trustees" and Ann Rock was secretary of the union. After the meeting they went to the office of the local on the third floor of the building and a few minutes later appellant arrived and engaged in an argument with Ann Rock and Mrs. Lorine Shoemaker. Mr. Ernest Shoemaker was not a member of the union but was present in the office waiting to take his wife home.

Appellant left the office but returned a few minutes later with ten or twelve men, and apparently with reference to these men, he announced to all of those present: "They are the real members of Local 838, and we came up here to throw you all out." Mr. and Mrs. Shoemaker, Miss Stufflebeam and Mr. McMullin went into the hall. Appellant was "hollering and cussing" at Ann Rock, and when Mrs. Shoemaker saw that Ann Rock had not followed, she stepped back into the office and said, "Ann, get your coat. Let's get out of here." One of the men with appellant then asked who Mrs. Shoemaker was, and appellant answered with a remark so insulting and provocative that no purpose would be served in setting forth here even the substance of it. Mr. Shoemaker was then in the hall and he started to go in the office, according to him to get his wife, but there was evidence that indicated he may have had the intention of "getting" appellant instead. However, "before he could hardly move" appellant stepped from the office with a loaded revolver in his hand, pointed it at Shoemaker, and according to two witnesses said: "Start something and I will blow your ——— ——— guts all over the wall." Two other witnesses gave different versions of his remark, the principal difference being that they testified that he did not preface his threat with the condition that Shoemaker had to "start something." Appellant then looked over his shoulder, apparently to one of the men standing behind him and said, "Come on, Swede, let's take this guy." Ernest Shoemaker and his wife, Asa McMullin, Ruby Stufflebeam and Ann Rock, were then "literally pushed" and backed down the hall to the stairway by appellant who followed closely with his ten or twelve men immediately behind him. Appellant kept the loaded revolver pointed at Shoemaker and at the others and continued his abusive language. He urged those in front of him to start something, and repeated his threat as to what would happen to any one who did start something. As Shoemaker and those with him went down the stairs, appellant rested his gun on the stair railing over their heads and continued to call them "dirty names," and at this time or a few minutes later said, "I am going to get every one of you if I have to kill you one at a time." Shoemaker and those with him went to the first floor

and left the building. Appellant, with his ten or twelve men, followed them to the street door.

■ The offense here charged and of which appellant was found guilty is an assault with the intent to kill or to do great bodily harm. The intent, by express words, is made an essential element of the offense and must be proved. Section 559.190, RSMo1949, V.A.M.S.; State v. Cooper, 358 Mo. 269 [2], 214 S.W.2d 19 [5]; State v. Fair, Mo.Sup., 177 S.W. 355 [2]; State v. Stubblefield, 239 Mo. 526 [1], 144 S.W. 404 [3]; State v. Watson, 356 Mo. 590 [2], 202 S.W.2d 784 [2]. It is the unusual situation when there is direct evidence of the intent of a person charged with a crime such as here. Intent may and generally must be established by circumstantial evidence, for as a rule it is not susceptible of direct proof. State v. Whitaker, supra [7]; 23 C.J.S. Criminal Law, § 919. In determining whether or not the assault was committed with the intent charged it is clearly within the province of the jury to consider the statements of the appellant, the nature of the weapon used, the manner of using it, and all of the related circumstances giving rise to the incident out of which the charge arose. State v. Hoffman, 78 Mo. 256 [2]; State v. Musick, 101 Mo. 260 [6], 14 S.W. 212; 40 C.J.S., Homicide, § 79b(1); 6 C.J.S., Assault and Battery, § 79b(2); 4 Am.Jur. Assault and Battery § 102.

■ Appellant contends that the evidence establishes that his threat to shoot was conditional and therefore did not evidence a present intention to kill or to do bodily harm. However, all the circumstances should be taken into consideration and not just those occurring simultaneously with the assault. Appellant was strongly opposed to those who were managing the union. He belonged to one faction and Asa McMullin, Ruby Stufflebeam, Ann Rock and Mrs. Lorine Shoemaker belonged to another faction. After an argument with these people appellant obtained ten or twelve men and announced that he was going to "throw out" all of those present, which included Mr. Shoemaker. Either because of this threat or because they wished to avoid further unpleasantries, several of those in the office stepped into the hall. At least one person remained in the office and Mrs. Shoemaker returned. Until the insulting remark was made, the "throwing out" had occurred without incident other than verbal argument. However, when the insulting remark was made appellant apparently thought he had reason to believe that at least one of those present was not leaving without protest, and he then leveled a loaded revolver at Shoemaker and told him that if he started something he would shoot. The threat to shoot was made to accomplish that which appellant had no right to do, namely, to "throw" those who were in the office out of the building, and the clear unmistakable meaning of his words and actions were that Shoemaker and the others had better leave or he was going to shoot. Appellant clearly showed that this is what he meant because instead of being satisfied when he saw that Shoemaker was not going to "start something," by use of the loaded revolver and his ten or twelve "strong men," appellant backed Shoemaker and the others down the hall to the stairway, and then followed from the third floor to the street door to see that they did leave the building. The evidence tends to show that appellant had no right to put Shoemaker or any of the others out of the union hall, and with the present ability to destroy life or do great bodily harm he leveled a dangerous weapon on Shoemaker and threatened to kill him unless he complied immediately with a condition he had no right to demand. Consequently the same rule applies to his threat to shoot if Shoemaker did not immediately leave the building as though an unconditional intent to inflict serious bodily injury obtained. State v. Fine, 324 Mo. 194, 23 S.W.2d 7 [2]; State v. Dooley, 121 Mo. 591, 26 S.W. 558; State v. Epperson, 27 Mo. 255; Note, 39 L.R.A.,N.S., 143; Note, Ann.Cas.1913A, 202. From all the circumstances and facts developed in this case a jury could reasonably find that appellant was guilty of an assault on Ernest Shoemaker, and that he intended to kill or

do serious bodily harm if Shoemaker did not comply immediately with his demand that he get out of the building, and that he get out without "starting something."

■ Appellant argues at great length the merits of his claim that he was defending himself from an attack by Shoemaker. The State's evidence indicates that appellant was the aggressor. Whether appellant believed danger was imminent and whether there was, at that time, reasonable cause for that belief were issues for the jury. The jury was instructed on the question of self-defense, and the evidence by no means established that as a matter of law the appellant acted in self-defense. State v. Swindell, 357 Mo. 1090, 212 S.W.2d 415. The verdict is supported by the evidence.

The appellant assigns as error the refusal of the court to give at his request the following instruction: "You are instructed that if you find and believe from the evidence that an assault was made by defendant on Ernest Shoemaker, but that he did not intend to kill him or do him great bodily harm, then you will acquit defendant."

■ Under the circumstances of this case this was a correct instruction. Appellant could not be convicted of common assault, a misdemeanor, because the information was not filed until more than one year after the alleged offense was committed. Other than for the fact that the statute of limitations prevented a conviction of common assault, the evidence clearly would have required that the jury be instructed on this lesser offense. Therefore, it was a correct declaration of the law applicable to this case that even though the jury found and believed that appellant was guilty of an assault, but further found and believed that in the commission of the assault appellant did not intend to kill or do great bodily harm, he was entitled to be acquitted.

■ The State contends that the appellant was not entitled to this instruction because it does not hypothesize sufficient facts. This is without merit. The State's instructions hypothesized the necessary facts and all instructions are to be read together. State v. Swindell, supra [4]. An assault was defined and the meaning of "intent" was explained to the jury in a separate instruction. The submission in the requested instruction of the question of an assault was in the exact manner as submitted by the State, and the submission of the lack of the charged intent was the converse of the submission of this essential question by the State in its main instruction.

■ The intent with which the assault was committed was the principal disputed issue in the case. The trial court did not give an instruction directly covering the point submitted in the requested instruction which, under the facts of this case, was in effect a converse instruction of one of the essential elements of the State's main instruction. Therefore under our consistent rulings the trial court committed reversible error in refusing to give this requested instruction based on appellant's theory of the case. State v. Ledbetter, 332 Mo. 225, 58 S.W.2d 453[3]; State v. Markel, 336 Mo. 129, 77 S.W.2d 112[7]; State v. Fraley, 342 Mo. 442, 116 S.W.2d 17 [3]; State v. Quinn, 344 Mo. 1072, 130 S.W.2d 511[3]; State v. Talbert, 351 Mo. 791, 174 S.W.2d 144[3]. The practice of concluding the State's main instruction with the words "unless you so find you will acquit," or words to that effect which were used in this case, is not sufficient reason for refusing the correct converse instruction offered by the appellant. State v. Fraley, supra, [4]; State v. Quinn, supra [4].

■ In his brief appellant challenges instruction number 6, but he did not preserve his objection for appellate review. No mention of the objection is made in the motion for new trial. Other matters complained of are of such nature that they are not likely to recur upon another trial, and for that reason will not be discussed.

For the error resulting from the refusal of the trial court to submit to the jury the above referred to instruction requested by

the appellant, the judgment is reversed, and the cause remanded.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.